Dr. Lenora B. FULANI, et al., Plaintiffs,

v.

Nicholas F. BRADY, Secretary of the Treasury, et al., Defendants.

Commission on Presidential Debates, Intervenor.

Civ. A. No. 88–2649.

United States District Court, District of Columbia.

Feb. 2, 1990.

Arthur R. Block, New York City, William A. Dobrovir, Dobrovir & Gebhardt, Washington, D.C., Gary Sinawski, New York City, for plaintiffs.

Robert K. Coulter, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., for defendants.

Harold E. Masback, III, Lee Levine, Lewis K. Loss, Ruth A. Ernst, Ross, Dixon & Masback, Washington, D.C., for intervenor.

## MEMORANDUM OPINION AND ORDER

REVERCOMB, District Judge.

In this case, Dr. Lenora B. Fulani claims that the Commission on Presidential Debates' failure to invite her to participate in the 1988 presidential debates was partisan and therefore invalidates its status as a tax-exempt organization under § 501(c)(3) of the Internal Revenue Code. This matter is now before the Court pursuant to Defendants' Motion to Dismiss on the ground that Plaintiffs lack standing.

## I. FACTS

In February 1987 the Intervenor, Commission on Presidential Debates ("CPD"), was founded by the Chairmen of the Democratic and Republican National Parties in order to assume the role of sponsoring general election debates between the presidential and vice-presidential candidates which had previously been performed by the League of Women Voters ("the League").[1] The CPD obtained tax-exempt status under section 501(c)(3) of the Internal Revenue Code,[2] making it eligible under Federal Election Commission regulations to sponsor debates between candidates for federal office. On July 7, 1987, the CPD formed an advisory committee to formulate criteria for selecting candidates for its debates. The committee recommended, *inter alia*, inviting only candidates who had a "realistic chance of winning" the election.

On June 24, 1987, Plaintiff Dr. Lenora Fulani ("Fulani") announced her candidacy for the office of President of the United States. She qualified for federal primary matching funds in January 1988. In the November 1988 election she was on the ballot in all 50 states and the District of Columbia.

On July 13, 1987, Fulani wrote to the CPD, asking for a statement of its participant selection criteria. Plaintiff received no response and on August 5, 1988, Fulani wrote to the CPD to describe her candidacy, to ask for her inclusion in the CPD's debates, and to inquire as to what application procedure and criteria the CPD had created for independent presidential candidates. Twenty-five days later, the CPD informed Fulani that it would extend "an invitation to participate in one or more of its debates to any candidate with a realistic chance of being elected to the Presidency or Vice–Presidency, whatever the candidate's party affiliation." The letter did not state that there was an application procedure nor did it define the selection criteria except in two generally worded sentences.

By letter dated September 12, 1988, Fulani informed the CPD that she considered

---

1. The League and the CPD had initially agreed that each organization would sponsor a presidential debate; the CPD would sponsor the September 25, 1988 debate and the League would sponsor the October 13, 1988 debate. The League, however, withdrew its sponsorship of the October 13, 1988 debate because it would not agree to the format established between the major party candidates in a Memorandum of Understanding which was submitted to the League on a take-it-or-leave-it basis. The Memorandum of Understanding included provisions to control, *inter alia*, editorial decisions as to who will ask the debate questions and what opportunities will be available for follow-up questions. The League declared that it would not subscribe to the Memorandum of Understanding and accordingly withdrew its sponsorship of the October 13, 1988 debate, stating that "the League has no intention of becoming an accessory to the hoodwinking of the American public." The CPD stepped in immediately to take over sponsorship of the second debate and it was held as scheduled.

2. Section 501(c)(3) provides for the exemption from federal income tax of organizations operated exclusively for charitable or educational purposes, no part of the net earnings of which inures to the benefit of any private shareholder or individual. To qualify under this exemption an organization must not "participate in, or intervene in (including the publishing or distributing of statements), any political campaign on behalf of (or in opposition to) any candidate for public office." I.R.C. § 501(c)(3), *as amended by* Omnibus Budget Reconciliation Act of 1987, Pub.L. No. 100–203, § 10711, 101 Stat. 1330, 1330–464 (1987).

   Furthermore, a section 501(c)(3) organization is eligible to receive charitable contributions which are tax-deductible to the donor for federal income, estate, and gift tax purposes. *See* 26 U.S.C. §§ 170(a)(1), (c)(2)(D), 2055(a)(2), 2106(a)(2)(A)(ii) and 2522(a)(2).

   *See generally Association of the Bar v. Commissioner of Internal Revenue,* 858 F.2d 876 (2d Cir.1988).

the CPD's selection criteria for non-major party candidates to be a de facto exclusion of such candidates since only the Democratic or Republican candidate had a realistic chance of winning the November election. The CPD replied in a letter dated September 13, 1988, which stated that "the Commission has adopted a set of nonpartisan selection criteria" which include that the candidate have "a realistic chance of being elected." On or about September 15, 1988, Fulani supplied the CPD with further information that it had requested. On September 19, 1988, the CPD denied Fulani's request for inclusion in the presidential debates.

Fulani filed this matter on September 20, 1988 against Defendants Nicholas F. Brady, Secretary of the Treasury, and Lawrence B. Gibbs, Commissioner of Internal Revenue Service, seeking injunctive relief and damages; specifically, (i) an order requiring the Defendants to revoke the tax-exempt status of the CPD under 26 U.S.C. § 501(c)(3); (ii) an order that the Defendants assess and collect taxes allegedly due from the CPD as a result of the revocation of its tax-exempt status; and (iii) an award to Plaintiffs of damages in the amount of $5,000,000.[3] Fulani also filed separate motions for temporary restraining orders or preliminary injunctions seeking either to enjoin the CPD-sponsored debates from going forward or an order from this Court compelling CPD to include Fulani in its debates. In this Court's September 23, 1988 Order, denying Fulani's motion for relief with respect to the September 25, 1988 debate, this Court ruled that Fulani had raised "serious questions ... concerning the tax-exempt status of the defendants." However, this Court denied the motion because of the "public interest in allowing the presidential debates to go forward and in preserving an orderly political process."[4] In this Court's October 12, 1988 Order, denying Fulani's motion for relief with respect to the October 13, 1988 debate, this Court reiterated the seriousness of Fulani's claims that the CPD's partisanship made it ineligible for a tax exemption, but again declined to enjoin the debate because of the public interest.

## II. STANDING

The requirement of standing is premised on "Article III of the Constitution [which] confines the federal courts to adjudicating actual 'cases' and 'controversies.'" *Allen v. Wright*, 468 U.S. 737, 750, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984). Standing is necessary to the jurisdiction of this Court to hear this matter. *See Warth v. Seldin*, 422 U.S. 490, 498–99, 95 S.Ct. 2197, 2204–05, 45 L.Ed.2d 343 (1975) (whether a plaintiff "has made out a 'case or controversy' ... within the meaning of Article III ... is the threshold question in every federal case, determining the power of the court to entertain suit.").

The Supreme Court has developed a three-prong model by which to assess Article III standing. A Plaintiff must allege: (1) a "personal injury" that is (2) "fairly traceable to the defendant's allegedly unlawful conduct," and (3) which is "likely to be redressed by the requested relief." *Allen*, 468 U.S. at 751, 104 S.Ct. at 3324; *see*

---

**3.** The complaint also contained three counts against CPD as a Defendant; specifically, (i) that CPD discriminated against Fulani on the basis of race and sex in violation of the Fourteenth Amendment; (ii) that Fulani has a First Amendment right to participate in the CPD-sponsored debates; and (iii) that CPD's Articles of Incorporation and status as a tax-exempt organization under § 501(c)(3) provided Fulani with a contractual right to participate in the debates. CPD filed a motion to dismiss these claims against it which was subsequently mooted by Plaintiffs' notice of dismissal of the three counts against CPD pursuant to Fed.R.Civ.P. 41(a)(1). CPD was removed from this matter as a defendant but subsequently intervened.

**4.** On September 14, 1988, the Court of Appeals denied Plaintiffs' motion for summary reversal of this Court's September 23, 1988 Order, and summarily affirmed this Court's Order on its own motion. A summary affirmance is proper, especially on the court's own motion, only when the "merits ... are so clear that expedited action is justified" and "no benefit will be gained from further briefing and argument of the issues presented." *Taxpayers Watchdog, Inc. v. Stanley*, 819 F.2d 294, 297–98 (D.C.Cir.1987). Fulani did not appeal from this Court's October 12, 1988 Order.

*also Duke Power Co. v. Carolina Envtl. Study Group, Inc.*, 438 U.S. 59, 72, 98 S.Ct. 2620, 2630, 57 L.Ed.2d 595 (1978); *Dellums v. United States Nuclear Regulatory Comm'n*, 274 U.S.App.D.C. 279, 863 F.2d 968 (1988). The court should apply the three factors to the facts at hand with the following questions in mind: "Is the injury too abstract, or otherwise not appropriate, to be considered judicially cognizable? Is the line of causation between the illegal conduct and injury too attenuated? Is the prospect of obtaining relief from the injury as a result of a favorable ruling too speculative?" *Allen*, 468 U.S. at 752, 104 S.Ct. at 3325.

The burden of establishing standing is on the Plaintiff. More fully,

> the Court must accept as true all material allegations of the complaint and construe it in favor of plaintiffs, and it may consider matters extrinsic to the complaint itself deemed supportive of plaintiffs' standing. [Citation omitted.] If however, the facts alleged do not permit a reasonable inference that defendants' putatively unlawful conduct caused the harm, or that if the relief requested is afforded the injury will be rectified, standing has not been shown, and the complaint must be dismissed.

*Khalaf v. Regan*, 85–1 U.S. Tax Cas. (CCH) ¶ 9269, 1985 WL 392 (D.D.C.1985), *aff'd*, No. 85–5274 (D.C.Cir. Sept. 19, 1986).

### A. INJURY

The injury which Fulani claims is her exclusion from the debates.[5] However, the mere exclusion—while a specific or tangible event—cannot be deemed an injury under standing analysis in and of itself. Indeed, Fulani does not contend that her exclusion alone constitutes the injury which provides her with standing. The court must more fully assess the context of *why* the exclusion constitutes an injury. The reasons that Fulani proffers are not sufficient.

The first reason upon which Fulani relies to illustrate her injury is that CPD's used its tax-exempt status to advance an alleged political agenda that differs from Fulani's and to undermine her political legitimacy:

> CPD used tax-exempt funds and the privilege of its tax-exempt status to carry out a 'voter education' program in a manner calculated to show the Democratic and Republican parties in a favorable light; to discredit the very idea of independent candidates being meaningful participants in the presidential election; and to minimize the possibility that the major party candidates would be pressed to speak to public policy issues that were being raised by Dr. Fulani and other independent candidates but which the Democratic and Republican party candidates chose to ignore or to address in generalities.

*Plaintiffs' Memorandum* at 13–14. However, frustrations over conduct which is at odds with an individual's own political position is precisely the type of abstract injury which other courts have ruled insufficient to constitute Article III injury. *See Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 483, 102 S.Ct. 752, 764, 70 L.Ed.2d 700 (1982) ("assertion of a right to a particular kind of Government conduct, which the Government has violated by acting differently, cannot alone satisfy the requirements of Article III"); *Khalaf v. Regan*, 85–1 U.S. Tax Cas. (CCH) ¶ 9269 (D.D.C.1985), *aff'd*, No. 85–5274 (D.C.Cir. Sept. 19, 1986) (thwarting of pro-Palestinian plaintiffs' political aspirations by virtue of competitive advantage be-

---

5. *Plaintiffs' Memorandum of Points and Authorities in Opposition to Commission on Presidential Debates' and Federal Defendants' Motion to Dismiss ("Plaintiffs' Memorandum")* expressly states that the focus of the standing issue is on Fulani. *Id.* at 16 n. 7. The Plaintiffs' contend that "[t]he arguments establishing [Fulani's] standing as a candidate *ipso facto* establish standing for her campaign organization, Lenora B. Fulani's Committee for Fair Elections." *Id.*

As to the third Plaintiff in this action, Barbara Taylor, the Plaintiffs state that "her standing is based on her status as a supporter of the Fulani candidacy, her status as a candidate for Congress running on the same party ticket as Dr. Fulani in the 1988 General Election, as a voter, and as a taxpayer." *Id.* However, none of Plaintiffs' substantive analysis attempts to distinguish the standing of Taylor in any way from the other two Plaintiffs.

stowed upon pro-Israeli groups by Secretary of Treasury by granting of tax exemption did not constitute cognizable injury). This Court rejects any notion that Fulani has suffered a cognizable injury based upon any alleged lack of recognition or diminution of her political stature. The factors by which a candidate's "political legitimacy" are measured are too diverse and intangible in order for this Court to engage in any meaningful discussion to determine whether Fulani's political legitimacy has in fact been frustrated by her exclusion from the presidential debates.

More significantly, Fulani attempts to define her injury as the loss of media exposure and voter recognition and support.[6] This argument entails two facets of injury. First, not only does she claim a loss of wide-spread media and public attention which independently would have been of value to her but, secondly, she claims that the major party candidates who did receive exposure from involvement in the debates obtained a competitive advantage over her in the general election.

In *Fulani v. League of Women Voters Educ. Fund*, 882 F.2d 621 (2d Cir.1989), the court held that Fulani had standing to seek revocation of the League's tax-exempt status where she alleged that the League's decision to exclude her from participating in the Republican and Democratic primary debates was partisan.[7] In *League of Women Voters*, the court described Fulani's injury as follows:

> In this era of modern telecommunications, who could doubt the powerful beneficial effect that mass media exposure can have today on the candidacy of a significant aspirant seeking national political office. The debates ... were broadcast on national television, watched by millions of Americans, and widely covered by the media. It is beyond dispute that participation in these debates be-

stowed on the candidates who appeared in them some competitive advantage over their non-participating peers. [Citations omitted.] In our view, the loss of competitive advantage flowing from the ... exclusion of Fulani from the national debates constitutes sufficient "injury" for standing purposes, because such loss palpably impaired Fulani's ability to compete on an equal footing with other significant presidential candidates.

*Id.* at 626.

As a general proposition this Court does not disagree that media exposure is of considerable value to a candidate, but merely stating the obvious does not substitute for analysis of the injury requirement in Article III standing. This Court concludes that any injury that Fulani claims is speculative and, as demonstrated more fully in this Court's discussion of causation and redressability, attenuated at best.

First, this Court cannot reasonably infer that the debates themselves provided the participants with a competitive advantage over nonparticipants, *i.e.*, Fulani, by the mere fact that the 1988 debates constituted media events. This Court's difficulty with the Second Circuit's analysis is that the Second Circuit assumes that the major party candidates *gained* something that they otherwise did not have over Fulani; namely, media exposure and public recognition. However, the very reason why the major party candidates were invited to participate in the debates was because, as conceded by Fulani, they already had a realistic chance of winning the election and already had the competitive advantage over Fulani—and other fringe party candidates—in terms of media exposure and public recognition. The only competitive advantage that the major party candidates could hope to achieve through the media generated by

*Plaintiffs' Memorandum* at 17.

---

**6.** Fulani describes her injury as follows:
The complaint alleges that she had suffered harm that goes to the very essence of effective participation in a presidential election—gaining credibility, name recognition and exposure; attracting contributions of money and labor; gaining access to national broadcast coverage.

**7.** On the merits of Fulani's claim, however, the court held that the League's exclusion of Fulani from its primary season debates did not constitute partisan activity in contravention of section 501(c)(3). *Id.* at 630.

the debates would be improving their political positions relative to *each other*.[8]

More fundamentally, Fulani's claim that she would have received media coverage and public recognition had she been included in the debates is sheer speculation. This Court has no way of determining what the real injury to Fulani is based on her exclusion from the debates because the media coverage is dependent upon a number of diverse factors involving the structure and quality of the debates, including the number of candidates participating and the stature of those participating. If all eighty-two candidates for President in 1988 were participants in the debates this Court cannot reasonably infer that the debates would actually be broadcast nationally and that there would be millions of viewers. Indeed, even assuming that there was media coverage of a debate which involved every fringe party candidate, this Court cannot reasonably infer what practical value, if any, such a political free-for-all would have for the American voters in terms of candidate recognition or voter education. Indeed, if such a debate were staged, this Court maintains serious doubt whether major party candidates—who presumably would be the media draw in the first place—would participate. The injury that Fulani claims she suffered—and which the Second Circuit relied upon in *League of Women Voters*—was based upon a debate structure involving the two major party candidates and this Court refuses to speculate that the value of these debates would remain constant if in fact Fulani—and dozens of other presidential contenders—were invited to participate. This Court cannot determine with any degree of reasonableness what the value of the media coverage would have been to Fulani had she been included in the debates. Accordingly, this Court rules that Fulani has not identified a palpable and nonspeculative injury for standing and Article III purposes.

## B. CAUSATION

The essential thrust of Fulani's injury in being excluded from the presidential debates is the loss of media exposure and political legitimacy before the American public which the major party candidates received from their involvement in the debates. However, Fulani's injury is not traceable to the tax-exempt status of CPD which allowed it to *sponsor* the debates under federal election law, but to the media organizations who *covered* the debates.

In *League of Women Voters* the Second Circuit analyzed the issue of causation as follows:

> Fulani's injury does not derive solely from the fact that she ultimately failed to win the presidency in 1988.[9] Rather, the asserted harm also flows from the League's and the federal government's allegedly partisan restriction of her opportunities to communicate her political ideas to the voting public at large. That is the essence of the judicially cognizable injury which Fulani has asserted, and, on the facts of this case, that is the injury which we find 'fairly traceable' to her exclusion from the League-sponsored debates. *See also Illinois Elections Bd. v. Socialist Workers Party*, 440 U.S. 173, 186, 99 S.Ct. 983, 991, 59 L.Ed.2d 230 (1979) ("[A]n election campaign is a means of disseminating ideas as well as attaining political office.... Overbroad restrictions on ballot access jeopardize this form of political expression.").

882 F.2d at 627. This Court's difficulty with the Second Circuit's analysis is that it assumes that the sponsor of the debates is the one who is providing the access by

---

**8.** Ironically, the value of media exposure by participating in the debates is of some question by the fact that in the 1988 debates then Vice-president Bush actually negotiated for *less* rather than more opportunities to engage in debate appearances with his challenger Governor Dukakis.

**9.** The Second Circuit recognizes that if failure to win the presidency were the only injury alleged

by Fulani then she could not show causation by her exclusion from the primary debates because of the " 'endless number of diverse factors potentially contributing to the outcome of state presidential primary elections, caucuses and conventions.' " 882 F.2d at 627 (quoting *Winpisinger v. Watson*, 628 F.2d 133, 139 (D.C.Cir.), *cert. denied*, 446 U.S. 929, 100 S.Ct. 1867, 64 L.Ed.2d 282 (1980)).

which the candidates impart their views to the public while ignoring the independent role of the media in determining whether the debates are covered.

The role of the CPD is simply as the coordinator and sponsor of the debates. The decisions to cover the debates and the extent of that coverage are made independently by the media organizations. If the CPD held a debate but no one from the media came to cover it then Fulani would be hard-pressed to assert any injury from her exclusion. Fulani cannot simply assume that media coverage of the presidential debates causally flows from CPD's —or any other organization's—sponsorship of the events. The only reasonable inference that this Court can make is that media coverage of the debates is a function of *who* is involved in the debates. Whether the media would choose to cover a presidential debate in which fringe party candidates are involved—with or without the presence of the major party candidates—is an editorial decision entirely within the control of the media organizations.

The Second Circuit's reliance on *Common Cause v. Bolger*, 512 F.Supp. 26 (D.D.C.1980) (three-judge panel), is not persuasive to this Court. In *Common Cause v. Bolger*, the plaintiffs, whose members included candidates challenging incumbent members of Congress for election, alleged that the federal franking statute, which effectively granted small subsidies to the reelection campaigns of incumbent officials, was unconstitutional because it impaired the nonincumbents' ability to compete with incumbent candidates on equal terms. Finding that the plaintiffs had standing to sue, the court stated:

> This dispute over standing boils down to a dispute over the role of ... elections in our political system. If the purpose of campaigns is only to elect candidates, then defendants' and intervenor's arguments concerning causation and resultant lack of standing might have some weight. [National] campaigns, however, serve other purposes besides electing particular candidates to office. They are also used to educate the public, to advance unpopular ideas, and to protest the

political order, even if the particular candidate has little hope of election. The First Amendment most certainly protects political advocacy of this type, and infringements of these rights can occur regardless of the success or failure of a particular candidate at the polls. Thus, the causation requirement is satisfied here, for the asserted harm, and its remedy, are not dependent upon electoral outcome, but on the existence of the franking statute and the conduct permitted under its aegis.

*Id.* at 32.

However, in *Common Cause v. Bolger* the franking statute itself, by providing incumbent candidates with the free use of the United States mails, constituted direct access to the American public by which the incumbents could express their positions. In the instant case the debates themselves do not provide this direct access; rather, the causal link in the access chain is the independent decision of the media to provide the debates with free use of the radio, television and print mediums in order that the candidates can deliver their messages to the American voters.

## C.  REDRESSABILITY

Fulani claims that "if the federal defendants were ordered to revoke the CPD's 501(c)(3) status then it immediately would be ineligible under federal election campaign finance law to carry out the specific activity which is the focus of the complaint, the sponsorship of the Presidential debates." *Plaintiffs' Memorandum* at 11. However, Fulani's real injury is *not* her mere exclusion from the debates but the purported loss of media coverage arising from those debates which in turn has nothing to do with the CPD's sponsorship of the debates but with the independent editorial decisions of the media organizations. In light of the absence of any judicially cognizable injury and the lack of causation between any injury and the CPD's 501(c)(3) tax status, the inability of this Court to redress Fulani's injury is obvious.

If this Court were to order the Defendants to revoke CPD's 501(c)(3) status and CPD were accordingly ineligible to sponsor the presidential debates, there can be no reasonable inference that any other eligible organization would assume the role of sponsor and include Fulani in the these debates. Indeed, Fulani concedes that in the absence of CPD's sponsorship of the debates she can only speculate whether another entity would include her in the debates: "if the CPD had been eliminated from the debate sponsorship arena early in the campaign, the League or other potential debates sponsors *might have taken* a more receptive stance toward inclusion of Dr. Fulani either in debates or in other voter education activities." *Plaintiffs' Memorandum* at 13 n. 5 (emphasis added). Even if another entity did sponsor the debates and include Fulani—perhaps along with all of the dozens of other fringe party candidates—this Court cannot order the media to cover the debates or the major party candidates to participate in the debates. Accordingly, Fulani might still be denied the media coverage and political legitimacy which she seeks.

Furthermore, even if there were no presidential debates and Fulani's major party opponents also lost the public exposure with which the debates provided them, the major party candidates would not lose their competitive advantage over Fulani. In Judge Cardamone's concurring opinion in *League of Women Voters*, in which he agreed with the majority on the merits but argued that Fulani did not have standing, he stated:

> [The major party candidates would not be placed at a disadvantage with Fulani if the presidential debates were not held because] those candidates already have the legitimacy that she seeks, and those were the criteria employed when the League invited them to debate in the first place. The point is that the playing field remains tilted regardless of what we do because ... it was not the League that tilted it.

882 F.2d at 632. If this Court ordered the Defendants to revoke CPD's status and no debates were held, this Court fails to see how the relief would "have a substantial ameliorative effect on the specific injury alleged." *Id.* at 628 n. 6 (citing *Allen*, 468 U.S. at 753 n. 19, 104 S.Ct. at 3326 n. 19; *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26 at 45–46, 96 S.Ct. 1917, 1927–1928, 48 L.Ed.2d 450 (1976)).

Accordingly, it hereby is

ORDERED that the Defendants' Motion to Dismiss be, and the same hereby is, GRANTED; and it is further

ORDERED that the Plaintiffs' Complaint be, and the same hereby is, DISMISSED.