**Dr. Lenora B. FULANI, Lenora B. Fulani for President and Maria Elizabeth Munoz, Plaintiffs,**

v.

**Lloyd BENTSEN, Secretary of the Treasury, and Margaret Richardson, Commissioner of Internal Revenue, Defendants.**

No. 92 Civ. 7182 (SWK).

United States District Court, S.D. New York.

Sept. 13, 1994.

Arthur R. Block, New York City, for plaintiffs.

Mary Jo White, U.S. Atty., S.D.N.Y. by Kay K. Gardiner, New York City, for defendants.

## MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

■ Plaintiffs Dr. Lenora B. Fulani ("Fulani"), an independent candidate for President of the United States in the 1992 election, her running mate, Maria Elizabeth Munoz ("Munoz"), and her campaign committee, Lenora B. Fulani for President (collectively, "plaintiffs") brought this action seeking an order revoking the tax-exempt status of the Commission on Presidential Debates (the "CPD"), a District of Columbia not-for-profit organization. Presently before the Court is the defendants' motion, pursuant to Federal Rules of Civil Procedure 12(b)(1), (6), (7) and 19, to dismiss the complaint for lack of subject matter jurisdiction, failure to state a claim upon which relief can be granted and failure to join a party. For the reasons that follow, defendants' motion is granted.

## BACKGROUND [1]

### I. Section 501(c)(3)

Federal Election Commission ("FEC") regulations provide that nonpartisan candidate debates [2] may be staged by, *inter alia*, nonprofit organizations that are exempt from federal taxation under section 501(c)(3) of the Internal Revenue Code, 26 U.S.C. § 501(c)(3)

---

1. For purposes of this motion, the facts alleged in the complaint must be accepted as true. *See Frasier v. Gen. Elec. Co.*, 930 F.2d 1004, 1007 (2d Cir.1991).

2. The structure of such debates is left to the discretion of the sponsoring organization "provided that (1) such debates include at least two candidates, and (2) such debates are nonpartisan in that they do not promote or advance one candidate over another." 11 C.F.R. § 110.13(b).

("Section 501(c)(3)"). *See* 11 C.F.R. § 110.13(a).

Section 501(c)(3), in turn, exempts from federal income taxation organizations operating exclusively for charitable or educational purposes. *See* 26 U.S.C. § 501(c)(3); *Fulani v. League of Women Voters Educ. Fund,* 882 F.2d 621, 623 (2d Cir.1989). To be eligible for Section 501(c) status, however, the organization must not:

> [P]articipate in, or intervene in (including the publishing or distributing of statements), any political campaign on behalf of (or in opposition to) any candidate for public office.

26 U.S.C. § 501(c)(3). The Treasury Department has defined activities that constitute participation or intervention in a political campaign on behalf of, or in opposition to a candidate to include "the publication or distribution of written or printed statements or the making of oral statements on behalf of or in opposition to such a candidate." 26 C.F.R. § 1.501(c)(3)–1(c)(3)(iii).

On February 19, 1987, the Democratic and Republican parties incorporated the CPD under the District of Columbia Non–Profit Corporation Act. The CPD's Articles of Incorporation provide, *inter alia,* that the corporation is not authorized to conduct any activities that would prevent it from qualifying for exemption under Section 501(c)(3). At the time of its incorporation, the CPD described itself as a "bipartisan, non-profit organization" committed to "strengthening the two-party system." To further this purpose, the CPD sought to become the sole sponsor of all general election presidential debates.

## II. The 1988 Election

On June 24, 1987, Fulani publicly announced her candidacy for President of the United States as an independent party in the 1988 general election. That year, the League of Women Voters Education Fund (the "League"), a tax-exempt organization under Section 501(c)(3), was the sole sponsor of two presidential primary debates. Pursuant to the League's criteria for selection of debate participants, only Democratic candidates were invited to participate in the Democratic primary debate, and only Republican candidates were invited to participate in the Republican primary debate. In December 1987, Fulani requested that the League invite her to participate in its presidential primary debates. The request was denied on the grounds that Fulani was not a publicly-announced candidate for either the Democratic or Republican parties.

As a result, in April 1988, Fulani, together with her running mate and campaign committee, moved for a temporary restraining order and preliminary injunction, seeking, *inter alia,* to compel the government to cause the League to conduct the debates in a nonpartisan manner or, in the alternative, to revoke the League's Section 501(c)(3) status. *See Fulani v. League of Women Voters Educ. Fund,* 684 F.Supp. 1185 (S.D.N.Y. 1988), *aff'd,* 882 F.2d 621 (2d Cir.1989). Finding that Fulani had failed to establish either a likelihood of success on the merits or sufficiently serious questions going to the merits, the Court denied plaintiffs' motion for a preliminary injunction. The Court also dismissed the complaint against the federal defendants. On appeal, the Second Circuit affirmed the district court's dismissal of the action on the merits. *See Fulani v. League of Women Voters Educ. Fund,* 882 F.2d at 621 (*"Fulani I"*). As an initial matter, however, the Court determined that Fulani had standing to compel the revocation of the League's tax-exempt status. In concluding that Fulani had standing to assert her claims, the Court stated that:

> [T]he loss of competitive advantage flowing from the League's exclusion of Fulani from the national debates constitutes sufficient "injury" for standing purposes, because such loss palpably impaired Fulani's ability to compete on an equal footing with other significant presidential candidates.

*Id.* at 626. The Court next stated that Fulani's asserted injury, *i.e.,* the partisan restriction of the opportunity to communicate her political ideas to the voting public, was " 'fairly traceable' to her exclusion from the League-sponsored debates." *Id.* at 627. Finally, the Court concluded that:

> In light of the fact that 501(c)(3) status is in practice a prerequisite to League spon-

sorship of candidate debates under FEC regulations, we conclude that there is a nexus between the federal defendants' tax treatment of the League and Fulani's asserted injuries which enables Fulani to trace her injury directly back to such federal defendants' tax treatment of the League.

*Id.* at 628.

After winning the primary elections, George Bush and Michael Dukakis, the respective Republican and Democratic presidential nominees, negotiated a Memorandum of Understanding (the "1988 Memorandum") with respect to the number, format, timing and sponsorship of two general presidential debates and one general vice-presidential debate. The 1988 Memorandum provided that one presidential debate be offered to the CPD for sponsorship and the other debate be offered to the League. After initially accepting the offer to sponsor a presidential debate, however, the League revoked its acceptance on the grounds that the Democratic and Republican candidates were attempting to control the format of the debates. As a result, the CPD sponsored both presidential debates during the 1988 election.

Fulani ran for President as an independent and minor-party candidate. The CPD did not invite Fulani, or any other independent candidate, to participate in the 1988 debates, however, and failed to publish criteria to be used in determining whether an independent candidate would be invited to participate in the debates. Accordingly, on August 5, 1988, Fulani wrote to the CPD to request a statement of criteria for determining whether an independent candidate would be invited to participate in the debates. On August 30, 1988, the CPD responded that it would not invite any candidate who did not have a "realistic chance of winning the election" (the "Selection Criteria"). Thereafter, on September 19, 1988, the CPD denied Fulani's application to be included in the 1988 debates.

## III. The District of Columbia Proceedings

Accordingly, on September 20, 1988, Fulani, her running mate, Barbara Taylor, and her campaign committee, Lenora B. Fulani's Committee for Fair Elections, brought an action for injunctive relief and damages before the United States District Court of the District of Columbia against defendants Nicholas F. Brady, Secretary of the Treasury, and Lawrence B. Gibbs, Commissioner of Internal Revenue.[3] *See Fulani v. Brady,* 729 F.Supp. 158 (D.D.C.1990), *aff'd,* 935 F.2d 1324 (D.C.Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 912, 116 L.Ed.2d 812 (1992). Fulani also filed separate motions for temporary restraining orders or preliminary injunctions seeking either to enjoin the CPD-sponsored debates from going forward or to compel the CPD to include Fulani in the debates.

The district court denied Fulani's motion for injunctive relief based on the " 'public interest in allowing the presidential debates to go forward and in preserving an orderly political process.' " *Id.* at 160. The court subsequently granted the defendants' motion to dismiss on the grounds that plaintiffs lacked standing to challenge the CPD's tax-exempt status. The court first set forth the three-prong requirement of standing, stating that a plaintiff must allege "(1) a 'personal injury' that is (2) 'fairly traceable to the defendant's allegedly unlawful conduct,' and (3) which is 'likely to be redressed by the requested relief.' " *Id.* (quoting *Allen v. Wright,* 468 U.S. 737, 751, 104 S.Ct. 3315, 3324–25, 82 L.Ed.2d 556 (1984)). Applying this test, the district court found that "Fulani has not identified a palpable and nonspeculative injury for standing and Article III purposes." *Id.* at 163. The court held further that Fulani's asserted injury—the loss of media exposure, voter recognition and support resulting from her exclusion from the debates—was not traceable to the CPD's tax-exempt status. Finally, with respect to redressability, the court stated that "[i]n light of the absence of any judicially cognizable

---

**3.** The complaint also alleged three counts against the CPD. The CPD filed a motion to dismiss, which was subsequently mooted by plaintiff's no-

tice of dismissal of the counts against the CPD. The CPD then intervened in the action.

injury and the lack of causation between any injury and the CPD's 501(c)(3) tax status, the inability of this Court to redress Fulani's injury is obvious." *Id.* at 164.

The Court of Appeals for the District of Columbia, over the dissent of Chief Judge Mikva, affirmed the dismissal of the action on the grounds that Fulani lacked standing to challenge the CPD's Section 501(c)(3) tax-exempt status. *See Fulani v. Brady,* 935 F.2d 1324 (D.C.Cir.1991), *cert. denied,* — U.S. ——, 112 S.Ct. 912, 116 L.Ed.2d 812 (1992) ("*Fulani II* "). As an initial matter, the D.C. Circuit noted that third-party litigation of an organization's tax-exempt status "is inconsistent with, if not precluded by, the statutory scheme created by Congress." *See Fulani v. Brady,* 809 F.Supp. 1112, 1117 (S.D.N.Y.1993). The Court next considered Fulani's assertion of "competitor standing" to challenge the CPD's tax-exempt status. Rejecting the application of "competitor standing" to Fulani's claims, the Court concluded that "where a party is seeking simply to remove a third party's entitlement to a tax exemption, the exemption likely will not bear sufficient links of traceability and redressability to the alleged injury to warrant standing under *Allen v. Wright,* [468 U.S. at 737, 104 S.Ct. at 3315]." *Fulani v. Brady,* 935 F.2d at 1328.

The D.C. Court next examined the Second Circuit's holding on the standing issue in *Fulani I.* Disagreeing with the Second Circuit's reasoning, the D.C. Circuit stated that:

> By taking the FEC regulation as a given ... the Second Circuit ignores the fact that the alleged traceability and redressability may be found in *League of Women Voters*—and could be found in the present case—only in combination with significant intervening causal factors.

*Id.* at 1329. The D.C. Circuit explained further that, while the CPD's tax-exempt status was a cause-in-fact of Fulani's injury, "the FEC's regulation is an intervening cause— were it not for the regulation, the CPD's tax status would be relevant to its sponsorship of the debates only insofar as it facilitated the CPD's funding through tax-exempt funds." *Id.* The D.C. Circuit also stated that the CPD remained an intervening causal agent. According to the Court:

> Were we to order revocation of the CPD's tax-exempt status, the CPD might decline to sponsor presidential debates altogether. This would remove the allegedly unfair advantage to Fulani's competitors, but would prevent Fulani from receiving the same benefit. Or the CPD could choose to include Fulani within the debates in order to retain its tax-exempt status, in which case the two major-party candidates might decline to participate in debates that do not present them as the two salient candidates, thus depriving the debates of the media appeal that Fulani seeks.

*Id.* The Court concluded that "given the number of causal factors significant to Fulani's alleged injury, we find that the claim lacks sufficient redressability to warrant standing under the Supreme Court's test in *Allen v. Wright.*" *Id.*

## IV. The 1992 Election

In February 1991, Fulani announced her candidacy for President in the 1992 election. In October 1991, she became the first presidential candidate to be certified by the FEC as eligible to receive federal primary matching funds. As of October 5, 1992, she was on the ballot in 40 jurisdictions (39 States and the District of Columbia) and was awaiting the outcome of a lawsuit to place her on another state's ballot.

By letter dated September 11, 1992, the CPD informed Fulani that she would not be invited to participate in the 1992 debates. The letter stated that:

> After careful consideration, the Advisory Committee and the Commission have determined that no nonmajor party candidate currently seeking election to the office of President or Vice President of the United States now has a realistic chance of being elected in 1992. Accordingly, invitations to debate under the Commission's sponsorship in 1992 have not been extended to any nonmajor party candidates.

From September 30 through October 1, 1992, Republican nominee George Bush ("Bush") and Democratic nominee Bill Clinton ("Clinton") negotiated the details of the

1992 presidential debates. The two major party candidates agreed that Ross Perot ("Perot"), who was an independent candidate for President, and his running mate, James B. Stockdale ("Stockdale"), would be invited to participate in the debates.

On October 5, 1992, Bush and Clinton offered the sponsorship of the three presidential and one vice-presidential debates to the CPD, subject to the terms negotiated between the two parties. By letter dated October 6, 1992, Perot accepted Bush and Clinton's invitation to participate in the four debates. The same day, the CPD agreed to sponsor the four debates provided that Perot was invited only to the first presidential debate. The CPD stated that it was unable to determine at that time whether Perot met its Selection Criteria for the subsequent debates, and that the CPD would have to make that decision after the first debate.

Bush and Clinton rejected the CPD condition regarding Perot, however, and informed the CPD that it only could sponsor the debates according to the terms agreed upon between the two parties. The next day, CPD accepted the sponsorship and agreed to invite Perot to all debates.

## V. Order to Show Cause

On October 5, 1992, less than one week before the first scheduled debate, plaintiffs filed this action by order to show cause for a temporary restraining order ("TRO") and preliminary injunction. Specifically, plaintiffs sought a TRO and preliminary injunction immediately revoking or suspending the tax-exempt status of the CPD unless it (1) invited Fulani and Munoz to participate in the 1992 debates on full and equal terms with all of the other candidates; (2) withdrew from sponsoring the debates; or (3) adhered to its Selection Criteria and thereby revoked its invitations to Perot and Stockdale to participate in the debates. Plaintiffs also sought an order immediately revoking or suspending the tax-exempt status of any organization exempt from taxation under Section 501(c)(3) that attempted to play a role in sponsoring the 1992 debates unless Fulani and Munoz were invited to participate in the debates on

full and equal terms as the other participants.

After a hearing held on October 9, 1992, the Court denied plaintiffs' motion for a TRO and preliminary injunction on the grounds that plaintiffs had not established either a likelihood of success or serious questions going to the merits.[4] *See* Order dated October 9, 1992. First, the Court found that plaintiffs' statutory claims were baseless. Specifically, the Court found that plaintiffs could not invoke 42 U.S.C. § 1983 as a basis for their claims, as defendants in this case are federal officials. In addition, the Court found that plaintiffs did not have a claim under Section 501(c)(3), as that section does not create a private right of action to challenge an entity's tax-exempt status. The Court also found that neither the CPD's criteria for nonmajor-party candidates, nor its decision to limit the debates to the two major-party candidates and the leading nonmajor-party candidate was likely to violate Section 501(c)(3), as that section only prohibits a tax-exempt organization from participating in a political campaign on behalf of or in opposition to a candidate for public office.

Second, the Court found that it was likely that Fulani's claims in this action were barred by the doctrine of collateral estoppel. Specifically, the Court found that Fulani was estopped from asserting that she had standing to bring her claims by the D.C. Circuit's decision in *Fulani II*.

Third, the Court noted, in *dicta*, that there was a likelihood of dismissal based on plaintiffs' failure to join the CPD as an indispensable party. It also noted that plaintiffs appeared to inappropriately seek mandamus. Finally, the Court noted that plaintiffs had failed to exhaust their administrative remedies prior to commencing this action.

## VI. The Amended Complaint

Subsequently, on February 5, 1993, the defendants moved to dismiss the complaint on the grounds that (1) plaintiffs failed to join the CPD as an indispensable party pursuant to Federal Rule of Civil Procedure 19;

---

4. The Court also found that plaintiffs had failed to establish the existence of irreparable harm.

(2) the doctrine of collateral estoppel bars plaintiffs from asserting that they have standing to challenge the CPD's tax-exempt status; (3) plaintiffs' action inappropriately seeks mandamus; (4) the complaint fails to state a claim upon which relief may be granted; and (5) plaintiffs have failed to exhaust their administrative remedies prior to bringing this action.

In response, on September 16, 1993, plaintiffs served an Amended Complaint seeking declaratory and injunctive relief for the violation of their First and Fifth Amendment rights under the United States Constitution.[5] Specifically, the Amended Complaint alleges that the CPD (1) established criteria for selecting independent candidates to participate in the 1992 debates that violated the requirements of Section 501(c)(3) (Count One); (2) violated its own selection criteria in inviting Perot and Stockdale to participate in the 1992 debates while excluding Fulani and Munoz (Count Two); (3) is organized and operated for partisan purposes (Count Three); (4) has acted with partisan intent to serve the interests of the Democratic and Republican parties (Count Four); and (5) has discriminated against plaintiffs on the basis of their race and gender (Count Five). By continuing the CPD's tax-exempt status despite these activities, plaintiffs allege that the defendants have violated their First and Fifth Amendment rights to freedom of speech, association and equal protection of the laws.

Defendants now move to dismiss the Amended Complaint, pursuant to Federal Rules of Civil Procedure 12(b)(1), (6) (7) and 19, on the grounds that plaintiffs (1) have failed to join the CPD as an indispensable party; (2) are collaterally estopped from asserting their claims by the D.C. Circuit's decision in *Fulani II*; (3) do not have standing to assert their claims; (4) have improperly sought mandamus; and (5) have failed to state a cause of action. As the Court finds that plaintiffs are estopped from asserting that they have standing to challenge the CPD's tax-exempt status, the Court need not consider the merits of plaintiffs' claims against the defendants.

**5.** The Amended Complaint deletes any reference to 42 U.S.C. § 1983 and plaintiffs concede that a

## DISCUSSION

Defendants contend that plaintiffs are collaterally estopped from asserting standing by the District Court of Appeals decision in *Fulani II*. For the reasons set forth below, the Court finds that the doctrine of collateral estoppel bars plaintiffs from relitigating their claims.

### I. Standard

■ "Collateral estoppel, like the related doctrine of res judicata, has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326, 99 S.Ct. 645, 649, 58 L.Ed.2d 552 (1979). Under the doctrine of collateral estoppel, "once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." *Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979); *see also G & T Terminal Packaging Co. v. Consol. Rail Corp.*, 719 F.Supp. 153, 159 (S.D.N.Y.1989) ("Collateral estoppel prevents the relitigation of an issue that was raised, litigated, and decided in a prior proceeding.").

■ To determine whether collateral estoppel bars the instant claims, the Court must analyze whether (1) the issues as to which preclusion is sought are identical to the issues decided in the prior proceeding; (2) the party against whom preclusion is presently sought had a full and fair opportunity to litigate the issue in the prior proceeding; and (3) the issues were necessarily decided in the prior proceeding. *See United States v. United States Currency in Amount of $228,536.00*, 895 F.2d 908, 918 (2d Cir.), *cert. denied*, 495 U.S. 958, 110 S.Ct. 2564, 109 L.Ed.2d 747 (1990).

claim under that statute cannot be brought against the defendants, who are federal officers.

## A. Identical Issues

■ With respect to the first requirement of collateral estoppel, the Supreme Court has held that direct identity between the issues is not required. Rather, the Court must determine "first, whether the issues presented by this litigation are in substance the same as those resolved [in the prior litigation]; second, whether controlling facts or legal principles have changed significantly since the [prior litigation]; and finally, whether other special circumstances warrant an exception to the normal rules of preclusion." *Montana v. United States*, 440 U.S. at 155, 99 S.Ct. at 974–75; *see also ITT Corp. v. United States*, 963 F.2d 561, 564 (2d Cir.1992) (stating that, under *Montana*, direct identity of issues is not required).

### 1. Substantial Similarity

The Court finds that the issue of Fulani's standing to challenge the CPD's tax-exempt status is substantially similar to the standing issue already litigated before the D.C. Circuit. In *Fulani II*, Fulani argued that "the CPD's tax-exempt status is the cause of her injury, and that injury would be redressed were that status revoked." *Fulani v. Brady*, 935 F.2d at 1326. Similarly, in the present case, Fulani characterizes the cause of her injury as "[t]he CPD's activities as a sponsor of presidential candidate debates" which creates "a structural inequality in the election process" and "is perpetuated by the defendants' improper continuation of the CPD's tax exempt status." *See* Amended Complaint at ¶ 68.

Plaintiffs argue that collateral estoppel is inappropriate here, as the plaintiffs in the instant case are different from the plaintiffs in *Fulani II* and because this case involves a different presidential election, different candidacies and different debates from those at issue in *Fulani II*. Specifically, plaintiffs contend that, as Munoz and Lenora B. Fulani for President were not parties to *Fulani II*, they cannot be estopped from challenging the CPD's tax-exempt status here. In addition, with respect to Fulani, plaintiffs argue that her standing in *Fulani II* was based on her status as a presidential candidate in the 1988 election. As she is now suing based on her

status as a presidential candidate in the 1992 election, she should be considered a different person for collateral estoppel purposes.

■ It is well settled that collateral estoppel binds not only the actual parties to a lawsuit, but also their privies. *Conte v. Justice*, 996 F.2d 1398, 1402 (2d Cir.1993). Thus, "one whose interests were adequately represented by another vested with the authority of representation is bound by the judgment, even though the first party was not formally a party to the litigation. The issue is one of substance rather than the names in the caption of the case." *Alpert's Newspaper Delivery Inc. v. New York Times Co.*, 876 F.2d 266, 270 (2d Cir.1989); *see also Expert Elec., Inc. v. Levine*, 554 F.2d 1227, 1233 (2d Cir.), *cert. denied*, 434 U.S. 903, 98 S.Ct. 300, 54 L.Ed.2d 190 (1977).

■ While no single factor is determinative of whether a person is privy to a litigation, courts have held that persons are in privity where they " 'are successors to a property interest, ... control an action although not formal parties to it, ... [have] interests [that] are represented by a party to the action, and possibly [are] coparties to a prior action'." *Ruiz v. Comm'r of Dep't of Transp.*, 858 F.2d 898, 903 (2d Cir.1988) (quoting *Watts v. Swiss Bank Corp.*, 27 N.Y.2d 270, 277, 317 N.Y.S.2d 315, 265 N.E.2d 739 (1970)). In addition, "the appearance of the same attorney in both actions creates the impression that the interests represented are identical." *Conte v. Justice*, 996 F.2d at 1402.

■ In the instant case, the Court finds that the interests of Munoz and Lenora B. Fulani for President were adequately represented in *Fulani II*. While Fulani's running mate and campaign committee may have varied between the 1988 and 1992 elections, Fulani herself was primarily responsible for the initiation and continuation of both lawsuits. The fact that plaintiffs were represented by the same attorney in both lawsuits further bolsters the conclusion that the interests represented in both actions are identical. Finally, the fact that Fulani was campaigning for a different election at the time she initiated the current case is irrelevant to a deter-

mination of whether she is the same person for collateral estoppel purposes. Accordingly, the Court finds that the plaintiffs in the instant action were in privity with the plaintiffs in *Fulani II* and that the D.C. Circuit's holding therefore binds them from relitigating the issue now.

■ Plaintiffs next contend that collateral estoppel does not apply because the present case involves a different presidential election, different candidacies and different debates from that involved in *Fulani II*.[6] As Fulani's asserted injury has not changed, however, the Court finds that collateral estoppel is applicable despite the fact that the instant case involves the 1992 general election debates, as opposed to the 1988 general election debates. In addition, while Fulani now claims that the CPD *de facto* changed its Selection Criteria by including Perot and Stockdale in the 1992 debates, this new allegation does not affect the standing issue, which turns on whether plaintiffs have alleged a "personal injury fairly traceable to the defendants['] allegedly unlawful conduct and likely to be redressed by the requested relief." *Allen v. Wright*, 468 U.S. at 751, 104 S.Ct. at 3324. Thus, as the standing issue remains substantially the same as that determined by the D.C. Circuit in *Fulani II*, the Court finds that the first requirement of identity has been met.

### 2. Changed Legal Climate

■ Plaintiffs argue that the Supreme Court's decision in *Northeastern Fla. Chapter of the Assoc. Gen. Contractors of America v. City of Jacksonville*, —— U.S. ——, 113 S.Ct. 2297, 124 L.Ed.2d 586 (1993) ("*Northeastern* "), constitutes an intervening change in the law of standing and that invoking collateral estoppel in this case is therefore inappropriate. The Court finds this argument unpersuasive.

In *Northeastern*, an association of general contractors challenged a city ordinance according preferential treatment to certain mi-

nority-owned businesses in the award of city contracts. The Court of Appeals for the Eleventh Circuit held that the association lacked standing to challenge the ordinance because it did not demonstrate that, but for the preferential treatment, any association member would have bid successfully for any of the contracts at issue. Under such circumstances, the Eleventh Circuit concluded that petitioner had failed to establish an "injury in fact." After examining its prior precedents on this issue, the Supreme Court reversed the Eleventh Circuit's decision, finding that:

> When the government erects a barrier that makes it more difficult for members of one group to obtain a benefit than it is for members of another group, a member of the former group seeking to challenge the barrier need not allege that he would have obtained the benefit but for the barrier in order to establish standing. The "injury in fact" in an equal protection case of this variety is the denial of equal treatment resulting from the imposition of the barrier, not the ultimate inability to obtain the benefit.

*Id.* at ——, 113 S.Ct. at 2303. Accordingly, the Court held that "[t]o establish standing, therefore, a party challenging a set-aside program like Jacksonville's need only demonstrate that it is able and ready to bid on contracts and that a discriminatory policy prevents it from doing so on an equal basis." *Id.* The Court indicated further that "[i]t follows from our definition of 'injury in fact' that petitioner has sufficiently alleged both that the city's ordinance is the 'cause' of its injury and that a judicial decree directing the city to discontinue its program would 're-dress' the injury." *Id.* at ——, n. 5, 113 S.Ct. at 2303, n. 5.

The Court finds that the D.C. Circuit's reasoning in *Fulani II* is not undermined by the *Northeastern* holding. In *Fulani II*, as in *Northeastern*, the D.C. Circuit found that Fulani had alleged an injury in fact sufficient to invoke the Court's jurisdiction. The D.C.

---

**6.** Plaintiffs cite to *Comm'r v. Sunnen*, 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898 (1948), to support their argument that collateral estoppel is inappropriate where the relevant facts in the two cases are separable. As noted by the defendants,

however, *Sunnen* has been modified by *Montana*, in which the Supreme Court held that direct identity of issues is not required. *See Montana v. United States*, 440 U.S. at 155, 99 S.Ct. at 974–75.

Circuit dismissed the case for lack of standing, however, because it found that intervening causal agents rendered the link between plaintiffs' alleged injury and the defendants' conduct too attenuated for standing purposes. As the *Northeastern* Court did not examine whether the presence of intervening factors influenced either the traceability or redressability requirements of standing, *Northeastern* does not constitute a changed legal climate such that collateral estoppel would be inappropriate here.

### 3. Other Special Circumstances

█ Plaintiffs next contend that public policy considerations compel the Court to reject the doctrine of collateral estoppel and consider their claims on the merits. Specifically, plaintiffs argue that the growing public importance of independent and minor party candidates to the electoral process mandates a new determination of whether plaintiffs have standing to challenge the CPD's tax-exempt status. The Court finds, however, that the growing importance of independent and minor party candidates to the political process does not constitute an intervening change in the legal doctrine of standing such that relitigation of the standing issue is warranted. Rather, it appears that Congress is better suited to address this issue. Moreover, the fact that legislation has been introduced in both chambers of Congress to reform the presidential debates process demonstrates that "[l]ack of standing within the narrow confines of Art. III jurisdiction does not impair the right to assert [a party's] views in the political forum or at the polls." *United States v. Richardson*, 418 U.S. 166, 179, 94 S.Ct. 2940, 2948, 41 L.Ed.2d 678 (1974). Accordingly, as the Court finds that the standing issue is identical to that already litigated before the D.C. Circuit, the first requirement of collateral estoppel has been met.

### B. The "Full and Fair Opportunity" Requirement

Turning to the second requirement for collateral estoppel, it is clear that Fulani had a "full and fair opportunity" to litigate the standing issue in the prior District of Columbia proceeding. In fact, Fulani unsuccessfully litigated the standing issue before the District of Columbia district court, Court of Appeals and the Supreme Court. *See Jefferson Ins. Co. of New York v. Fortress Re, Inc.*, 616 F.Supp. 874, 877 (S.D.N.Y.1984) ("A party given a full and fair opportunity to litigate an issue of law in one action may be estopped from relitigating it in a subsequent action.").

### C. Prior Proceeding

█ In determining whether collateral estoppel applies, the Court also must determine whether the issue was necessarily decided in the prior proceeding. In the instant case, the Court finds that the D.C. Circuit fully addressed the standing issue in *Fulani II*, concluding that "Fulani's alleged injury fairly cannot be traced to the IRS's grant of tax-exempt status to the CPD, but is instead dependent on the intervening actions of both the FEC and the CPD." *Fulani v. Brady*, 935 F.2d at 1331. Accordingly, as Fulani's assertion of standing to challenge the CPD's tax-exempt status was already raised, litigated and decided by the D.C. Circuit, she is collaterally estopped from relitigating this issue in the present case.

### II. Plaintiffs' Remaining Contentions

Plaintiffs argue that, as *Fulani II* expressly disagreed with the Second Circuit's reasoning in *Fulani I*, collateral estoppel cannot be invoked to bar her claims in the present case. They base their argument on Justice White's concurring opinion in *United States v. Stauffer Chem. Co.*, 464 U.S. 165, 174, 104 S.Ct. 575, 580–81, 78 L.Ed.2d 388 (1984).[7] In

---

7. Plaintiffs also argue that the Second Circuit's opinion in *Haitian Ctrs. Council, Inc. v. McNary*, 969 F.2d 1350 (2d Cir.1992), *rev'd on other grounds sub nom., Sale v. Haitian Ctrs. Council, Inc.*, —— U.S. ——, 113 S.Ct. 2549, 125 L.Ed.2d 128 (1993), stands for the proposition that collateral estoppel is inapplicable where there is a split in the circuits. Contrary to plaintiffs' conten-

tion, however, in *Haitian Ctrs. Council, Inc.*, the Second Circuit merely held that collateral estoppel was inappropriate to bar relitigation where there were different parties and " 'an intervening change in the applicable legal context', which warrants 'a new determination'." *Id.* at 1356 (quoting Restatement (Second) of Judgments § 28(2)).

*Stauffer*, plaintiff Stauffer Chemical Co. ("Stauffer"), a national manufacturing company with plants in several regions across the United States, challenged the legality of the Environmental Protection Agency's ("EPA") practice of using private contractors rather than federal employees to inspect Stauffer's plants. Stauffer had won a legal ruling in its favor on this issue in the Tenth Circuit and sought to invoke that decision to estop the EPA from relitigating the same issue in the Sixth Circuit. Finding that the issues in both cases arose from virtually identical facts, the Supreme Court ruled that the Court of Appeals was correct in applying the doctrine of collateral estoppel to bar relitigation of the government's claim in the Sixth Circuit.

Concurring with the majority's opinion, Justice White stressed the fact that the Sixth Circuit had not yet ruled on this issue. Had the Sixth Circuit adopted a contrary rule prior to the current action, however, Justice White indicated that Stauffer would not have been justified in invoking collateral estoppel to bar the government's action. According to Justice White:

> Extending preclusion to circuits that have adopted a contrary rule on the merits would be acceptable were it supported by any affirmative policy. It is not. Judicial economy is not served for the simple reason that no litigation is prevented; the prior litigant is subject to one black-letter rule rather than another. For the same reason, there is no concern about protecting the prior litigant from repetitious, vexatious, or harassing litigation. Finally, to the extent the policy against inconsistent decisions remains relevant when a circuit conflict exists, it cuts the other way. At least some measure of consistency and certainty is obtained by even-handed application of rules within individual circuits.

*Id.* at 178, 104 S.Ct. at 582.

 The Court declines to follow Justice White's reasoning in *Stauffer*.[8] Where, as here, the issues are so similar as to compel a finding of collateral estoppel, such a finding prevents the Court from ever reaching the merits of the standing issue. To rule otherwise would encourage the parties to forum shop, thereby undermining the purpose of collateral estoppel in promoting the finality of judgments. *See Yamaha Corp. of America v. United States*, 745 F.Supp. 734, 737–38 (D.D.C.1990), *aff'd*, 961 F.2d 245 (D.C.Cir. 1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1044, 122 L.Ed.2d 353 (1993). For this reason, other courts similarly have declined to follow Justice White's reasoning as to the applicability of collateral estoppel where there is a disagreement among the circuits. *See Yamaha Corp. of America v. United States*, 961 F.2d 245, 258 (D.C.Cir.1992) ("the fact that the substantive law may be different in the two jurisdictions does not affect the application of issue preclusion"), *cert. denied*, —— U.S. ——, 113 S.Ct. 1044, 122 L.Ed.2d 353 (1993); *National Post Office Mail Handlers v. American Postal Workers Union*, 907 F.2d 190, 194 (D.C.Cir.1990) ("The doctrine of issue preclusion counsels us against reaching the merits in this case, ... regardless of whether we would reject or accept our sister circuit's position.").

 Plaintiffs next argue that collateral estoppel does not apply to the standing issue because it is an unmixed question of law. It is true that "when issues of law arise in successive actions involving unrelated subject matter, preclusion may be inappropriate." *Montana v. United States*, 440 U.S. at 162, 99 S.Ct. at 978. However, "[w]hen the claims in two separate actions between the same parties are the same or are closely related ... it is unfair to the winning party and an unnecessary burden on the courts to allow repeated litigation of the same issue in what is essentially the same controversy, even if the issue is regarded as one of 'law.'" *United States v. Stauffer Chem. Co.*, 464 U.S. at 171, 104 S.Ct. at 579 (quoting Restatement (Second) of Judgments § 28, Comment b (1982)). As the subject matter in this case is closely aligned with *Fulani II*, the Court finds that the exception for pure questions of law does not apply here. Accordingly, plaintiffs are estopped from relitigating the standing issue already decided by the D.C. Circuit.

---

8. As a threshold matter, the Court notes that Justice White's concurrence was not adopted by the majority in *Stauffer*, and, therefore, does not have precedential effect.

**CONCLUSION**

As the Court finds that plaintiffs are estopped from asserting standing to challenge the CPD's tax-exempt status, defendants' motion to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(1), is granted. This Memorandum Opinion and Order closes the case.

SO ORDERED.