

1995 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-18-1995

# Burlington v Hyundai

Precedential or Non-Precedential:

Docket 94-5550

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

Recommended Citation

"Burlington v Hyundai" (1995). *1995 Decisions.* Paper 227.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/227

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

NO. 94-5550
_____

BURLINGTON NORTHERN RAILROAD COMPANY

Appellee

v.

HYUNDAI MERCHANT MARINE CO., LTD.

Appellant

_____

On Appeal From the United States District Court
For the District of New Jersey
(D.C. Civ. No. 93-cv-01478)
_____

Argued: March 7, 1995

Before: BECKER, SCIRICA, and WOOD, Circuit Judges.[0]

(Filed  August 18, 1995)

BRUCE G. PAULSEN, ESQUIRE (ARGUED)
S. NINA GELLERT, ESQUIRE
Nourse & Bowles
One Exchange Plaza
55 Broadway
New York, New York  10006

Attorneys for Appellant

BARRY N. GUTTERMAN, ESQUIRE (ARGUED)
WILLIAM D. BIERMAN, ESQUIRE
Barry N. Gutterman & Associates
52 Vanderbilt Avenue
New York, New York  10017

_____

[0]Honorable Harlington S. Wood, Jr., United States Circuit Judge
for the Seventh Circuit, sitting by designation.

1

_____

OPINION OF THE COURT

_____

BECKER, Circuit Judge.

This appeal concerns the timeliness of a maritime indemnity claim under the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 11707, though its ultimate disposition turns on the application of an "unmixed questions of law" exception to the doctrine of issue preclusion. The case arises from a shipment of furnace equipment by Tongil Co., Ltd. from Milwaukee, Wisconsin to Pusan, South Korea that arrived in damaged condition. The goods were carried by rail from Milwaukee to Seattle by plaintiff Burlington Northern Railroad Company ("Burlington"), and thence by sea to Pusan by defendant Hyundai Merchant Marine Co. ("Hyundai"). The damage apparently occurred while the cargo was in the possession of Burlington, but Tongil sued Hyundai for the damage. The case settled and approximately one month following the settlement, Hyundai sought indemnity from Burlington, which refused to pay because notice of the claim was not given within nine months following the delivery of the shipment as required in a Burlington circular, adopted as part of the contract of carriage.

Burlington brought a declaratory judgment action in district court. The court granted summary judgment for Burlington, and Hyundai brought this appeal. Although the legal question implicated by the timeliness issue is an interesting and

important one, this appeal turns not on that issue but on the doctrine of issue preclusion, for Hyundai's principal argument on appeal is that, in holding the notice of the claim untimely, the district court erred by failing to give issue preclusive effect to a decision by the District Court for the Western District of Washington in Atlantic Mutual v. OOCL, 1992 U.S. Dist LEXIS 13284 (W.D. Wash 1992). That case involved an indemnity claim brought against Burlington by a different ocean carrier for damage sustained to a shipment of Samsonite luggage from Taiwan to Denver via Seattle. The Atlantic Mutual court concluded that a time limit contained in a Burlington circular (adopted as part of the contract of carriage) did not foreclose the action in indemnity since such claims do not accrue and time limitations therefore cannot commence until liability is determined or a cognizable loss is incurred. If this general rule for indemnity claims were applied in the present action, Hyundai's claim would have been timely presented.

The district court in this case rejected Hyundai's argument and refused to apply the doctrine of issue preclusion to the issue resolved in Atlantic Mutual, relying on an exception for "unmixed questions of law," the scope of which is a question of first impression in this circuit. While the continued viability of this exception has been called into question by the Supreme Court's decision in United States v. Stauffer Chemical Co., 464 U.S. 165, 104 S. Ct. 575 (1984), we conclude that such an exception for questions of law continues to apply, and that it is satisfied only so long as the issue involved is one of law and

3

either (1) the two actions involve claims that are substantially unrelated or (2) a new determination of the legal issue is warranted in order to take account of an intervening change in the applicable legal context or otherwise to avoid inequitable administration of the laws.  See RESTATEMENT (SECOND) OF JUDGMENTS § 28 (1982).

Because the Atlantic Mutual action and this case are not substantially unrelated and since a new determination of the legal issue involved is not warranted, we conclude that the district court erred by relying on this exception to the otherwise applicable doctrine of issue preclusion.  Accordingly, we will reverse the order of the district court granting summary judgment to Burlington, and direct the district court on remand to grant issue preclusive effect to the decision of the district court in Atlantic Mutual.[0]

I.  FACTS AND PROCEDURAL HISTORY

A.  The Tongil Action

Hyundai's indemnity claim originates in an action brought by Tongil in the District Court for the Central District

---

[0]  Given our conclusion that the district court erred in failing to give preclusive effect to the Atlantic Mutual decision, we need not address the correctness of the district court's resolution of the merits, i.e. its holding that the provision in the Burlington circular (adopted as part of the contract of carriage), providing an absolute time limit for the filing of claims, is not subject to the general common law rule of accrual in indemnity actions, which provides that a cause of action in indemnity does not accrue -- and thus that a statute of limitations does not begin to run -- until such time that liability is determined or a cognizable loss is suffered.

4

of California for damages sustained to a cargo of furnace equipment shipped aboard M/V Hyundai Innovator in 1986 from Seattle, Washington to Pusan, South Korea. See Tongil Co. v. Vessel Hyundai Innovator, Case No. 88-04895 (C.D. Ca. 1988). The cargo had originally been shipped from Milwaukee to Seattle via Burlington railcar. On August 10, 1988, Tongil filed suit against Hyundai for the damages sustained to the shipment. On December 15, 1988, in response, Hyundai gave Burlington notice of its indemnity claim, but Burlington denied Hyundai's claim as not having been filed within the nine month time limitation prescribed in its circular and adopted as part of the contract of carriage. In particular, Burlington relied on Item 12 of its Rules Memorandum 2-C, which provides:

> As a condition precedent to recovery, any claim for loss or damage to lading shall be filed with BN [Burlington Northern] within nine (9) months of the date of delivery of the shipment, or within nine (9) months of a reasonable time for delivery in the event of non-delivery. Claim shall be supported with a copy of the shipping order, invoice, inspection report, or other proof of loss, and, if possible, the paid freight bill.

App. at 107.

In the underlying action by Tongil against Hyundai, to which Burlington was not a party, the District Court for the Central District of California concluded, following a bench trial, that the cargo was in fact damaged while in the possession of Burlington; yet the court awarded Tongil $114,870.64 in damages, interests, and costs against Hyundai. Hyundai appealed the judgment to the Ninth Circuit Court of Appeals, which

5

reversed. See Tongil Co. v. Vessel Hyundai Innovator, 968 F.2d 999 (9th Cir. 1992). Following the appeal, Hyundai settled the action with Tongil for $10,000 and then on January 26, 1993, requested indemnity of this amount together with legal expenses and costs totaling $104,079.49, which Burlington again denied.

B. The Atlantic Mutual Action

While Burlington was relying on Item 2-C of its Rules Memorandum to deny Hyundai's indemnity claim, it was defending another indemnity action in the District Court for the Western District of Washington brought by Orient Overseas Container Line ("OOCL"). See Atlantic Mutual v. OOCL, 1992 U.S. Dist LEXIS 13284 (W.D. Wash. 1992). Like Hyundai's claim, the viability of OOCL's claim in the Atlantic Mutual action turned on the question whether the general rule for indemnity accrual -- that an indemnity claim "does not accrue until the indemnitee's liability is determined by judgment or payment," id. at *9-10, and, therefore, that a statute of limitations on an indemnity claim cannot begin to run until such time -- should apply despite Item 2-C of Burlington's Rules Memorandum, which provided that the time limitation should be measured from the date of delivery. Atlantic Mutual had filed suit against OOCL to recover payments that Atlantic Mutual had made as an insurer to Samsonite Pacific, Ltd. ("Samsonite") for damages to a shipment of luggage en route from Taiwan to Denver via Seattle. In response, OOCL had filed a third party claim against Burlington for indemnity for its liability to Atlantic Mutual.

6

Burlington's denial of OOCL's indemnity claim was based solely on its contention that the claim was time barred since OOCL had failed to bring suit within the time period specified in Burlington Rules Memorandum 2-C.  This provision provided that "all suits against BN [Burlington Northern] shall be commenced no later than 1 year after the date of delivery."  Id. at *5.  OOCL, which notified Burlington of its claim more than one year after delivery, contended that this contractual limitations period did not alter the general rule governing actions in indemnity.  The Washington district court agreed with OOCL and concluded that its "cross-claim for indemnification is not barred by the limitations period in Burlington Northern's Rules Memorandum 2-C."  Id. at *12.  In reaching this conclusion, the court relied on the opinion of the Ninth Circuit in States S.S. Co. v. American Smelting & Refining Co., 339 F.2d 66, 70 (9th Cir. 1964), cert. denied 380 U.S. 964 (1965), which it read as concluding that an "indemnity claim . . . does not accrue until the indemnitee has made actual payment."  Atlantic Mutual at *12; see also id. ("[A]n action for indemnification accrues at the time of the indemnitee's payment despite a shorter contractual time limitations period applying to claims between the parties.").

C.  The Hyundai Action

Following the decision in Atlantic Mutual, Burlington, having already denied Hyundai's claim for indemnity in connection with the shipment of furnace equipment on several occasions, instituted this action on April 1, 1993, in the District Court for the District of New Jersey, seeking a declaratory judgment

7

that Hyundai had no timely claim against Burlington. In response, Hyundai filed a counterclaim seeking the $104,079.49 from Burlington in indemnity, and moved to transfer both actions to either the Central District of California or the Western District of Washington pursuant to 28 U.S.C. § 1404(a), given that none of the facts in the present case or the underlying action occurred in New Jersey and that neither of the parties is incorporated or has a principal place of business in New Jersey.

Burlington responded by moving for summary judgment on its declaratory judgment action. Hyundai opposed this motion on the grounds that (1) Burlington was estopped from relitigating the issues decided in Atlantic Mutual and (2) that, on the merits, Hyundai's indemnity claim was timely presented. The district court rejected both of these arguments, granted Burlington's request for summary judgment in the declaratory judgment action, dismissed Hyundai's counterclaim, and denied as moot Hyundai's motion to transfer the case. In rejecting Hyundai's estoppel argument, the district court held: "The Court interprets the Atlantic Mutual decision as involving a pure question of law, decided under the law of another Circuit, and therefore will not accord it issue-preclusive effect." Dist Op. at 8. This appeal followed.

Since the district court's decision to grant summary judgment rested on a legal determination of when issue preclusion should apply to "unmixed questions of law," our review is plenary. In reviewing the district court's decision, we apply federal common law principles of issue preclusion since we are

8

examining the issue preclusive effect of a prior federal court action.  See NLRB v. Yellow Freight Sys., Inc., 930 F.2d 316, 320 (3d Cir. 1991); Hicks v. Quaker Oats Co., 662 F.2d 1158, 1166 (5th Cir. 1981).

II.  ISSUE PRECLUSION

A.  Introduction

The doctrine of issue preclusion,[0] which is at issue in this action, derives from the simple principle that "later courts should honor the first actual decision of a matter that has been actually litigated."  18 CHARLES A. WRIGHT ET. AL., FEDERAL PRACTICE AND PROCEDURE § 4416 (1981) [hereinafter WRIGHT & MILLER].[0]  This

---

[0]  The doctrine describing the effect of former adjudications on subsequent actions has a number of aspects, and is referred to by a variety of terms, including res judicata, merger, bar, and collateral and direct estoppel.  See 18 CHARLES A. WRIGHT ET. AL., FEDERAL PRACTICE AND PROCEDURE § 4402 (1981) (tracing the varying terminology employed in this area).  Throughout this opinion we use the phrases "issue preclusion" and "collateral estoppel" interchangeably to refer to the rule, applicable to this action, providing preclusive effect to a fact, question, or right determined in a prior case.

[0]  Nearly a century ago, the first Justice Harlan eloquently set forth the rationales supporting the application of issue preclusion as follows:

> The general principle announced in numerous cases is that a right, question, or fact distinctly put in issue, and directly determined by a court of competent jurisdiction, as a ground of recovery, cannot be disputed in a subsequent suit between the same parties or their privies; and, even if the second suit is for a different cause of action, the right, question, or fact once so determined must, as between the same parties or their privies, be taken as conclusively established, so long as the judgment in the first suit remains unmodified.  This general rule is demanded by the very object for which civil courts have been established, which is

doctrine ensures that "once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation," Montana v. United States, 440 U.S. 147, 153, 99 S. Ct. 970, 973 (1979).  The prerequisites for the application of issue preclusion are satisfied when:  "(1) the issue sought to be precluded [is] the same as that involved in the prior action; (2) that issue was actually litigated; (3) it was determined by a final and valid judgment; and (4) the determination [was] essential to the prior judgment."  In re Graham, 973 F.2d 1089, 1097 (3d Cir. 1992) (quoting In re Braen, 900 F.2d 621, 628-29 n.5 (3d Cir. 1979), cert. denied 111 S. Ct. 782 (1991)).

Complete identity of parties in the two suits is not required for the application of issue preclusion.  Here Hyundai, which was not a party to the first suit (the Atlantic Mutual action), attempts to use issue preclusion offensively against Burlington, which was a party in the first action.  Such an

---

> to secure the peace and repose of society by the settlement of matters capable of judicial determination.  Its enforcement is essential to the maintenance of social order; for the aid of judicial tribunals would not be invoked for the vindication of rights of person and property if, as between parties and their privies, conclusiveness did not attend the judgments of such tribunals in respect of all matters properly put in issue and actually determined by them.

Southern Pacific R.R. v. United States, 168 U.S. 1, 48-49, 18 S. Ct. 18, 27 (1897).

10

application of issue preclusion is referred to as offensive[0] non-mutual[0] collateral estoppel, which has been recognized as proper by the Supreme Court in Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326, 99 S. Ct. 645, 649 (1979).[0] The Court in Parklane concluded that "a litigant who was not a party to a prior judgment may nevertheless use that judgment 'offensively' to prevent a defendant from relitigating issues resolved in the earlier proceeding," id. at 326, 99 S. Ct. at 649, subject to an overriding fairness determination by the trial judge.[0]

---

[0] The offensive use of collateral estoppel "occurs when the plaintiff seeks to foreclose the defendant from relitigating an issue the defendant has previously litigated unsuccessfully in an action with another party," while, in contrast, defensive use "occurs when a defendant seeks to prevent a plaintiff from asserting a claim the plaintiff has previously litigated and lost against another defendant." Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 n.4, 99 S. Ct. 645, 649 n.4 (1979). Because the indemnity claimant, Hyundai, seeks to prevent Burlington from relitigating an issue that Burlington lost against a prior claimant, OOCL, in a prior action, this case involves the application of offensive collateral estoppel. The fact that Burlington preemptively brought this action for declaratory judgment, seeking to avoid indemnity liability, does not alter the structural essence of the case.

[0] It is non-mutual because OOCL and not Hyundai was the plaintiff in the prior action. In Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326-28, 99 S. Ct. 645, 651-52 (1979), the Supreme Court disavowed a requirement of mutuality for issue preclusion to bar a party from relitigating an issue.

[0] Previously, in Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation, 402 U.S. 313, 328-29, 91 S. Ct. 1434, 1442-43 (1971), the Supreme Court recognized defensive non-mutual collateral estoppel, precluding a patentee from relitigating the validity of a patent because a federal court in a previous lawsuit had already declared the patent invalid.

[0] In reaching this conclusion, however, the Parklane Court recognized that two reasons, not implicated in the present action, counseled against the application of offensive, as opposed to defensive, non-mutual issue preclusion. First, its availability could create an incentive for potential plaintiffs "to adopt a `wait and see' attitude, in the hope that the first

B.  The Exception for Unmixed Questions of Law

         In this action, the parties did not dispute (with one

exception detailed in the margin) that all of the primary

requirements for application of non-mutual offensive collateral

---

action will result in a favorable judgment," since such
plaintiffs "will be able to rely on a previous judgment against a
defendant but will not be bound by that judgment if the defendant
wins."  Id. at 330, 99 S. Ct. at 651.  Second, offensive use of
collateral estoppel may be "unfair to a defendant," to the extent
that: (1) the defendant may have been sued in the first action
for "small or nominal damages" for which "he may have [had]
little incentive to defend vigorously, particularly if future
suits [were] not foreseeable"; (2) the "judgment relied upon for
a basis for the estoppel is itself inconsistent with one or more
previous judgments in favor of the defendant"; or (3) "the second
action affords the defendant procedural opportunities [e.g.
discovery procedures] unavailable in the first action that could
readily cause a different result."  Id. at 330, 99 S. Ct. at 651.
Acknowledging these concerns the Parklane Court nevertheless
allowed trial courts to determine in proper cases that non-mutual
offensive collateral estoppel should be applied.  The Court
stated that the "general rule" is "that in cases where a
plaintiff could easily have joined in the earlier action or
where, either for the reasons discussed above or for other
reasons, the application of offensive estoppel would be unfair to
a defendant, a trial judge should not allow the use of offensive
collateral estoppel."  Id. at 331, 99 S. Ct. at 651-52.
         Following Parklane, the Court in United States v.
Mendoza, 464 U.S. 154, 104 S. Ct. 568 (1984), limited the
application of offensive non-mutual collateral estoppel by
concluding that it could not be applied against the federal
government.  The Court reasoned that such a policy "would
substantially thwart the development of important questions of
law by freezing the first final decision rendered on a particular
legal issue."  Id. at 160, 104 S. Ct. at 572.  The Court
explained that "[a]llowing one final adjudication would deprive
this Court of the benefit it receives from permitting several
courts of appeals to explore a difficult question before this
court grants certiorari." Id.  "Indeed," the Court observed, "if
nonmutual estoppel were routinely applied against the Government,
this Court would have to revise its practice of waiting for a
conflict to develop before granting the Government's petitions
for certiorari."  Id.

12

estoppel were satisfied[0] and the sole basis of the district court's decision not to apply issue preclusion in this action was based on an exception for "unmixed question[s] of law."  In this appeal, Hyundai contends that the district court erred in

---

[0]  Burlington submits that the Atlantic Mutual decision, which denied Burlington's request for summary judgment, was not final since it was "not appealable," and hence it cannot be granted preclusive effect.  The district court did not reach this contention, choosing instead to rely on the exception for unmixed questions of law.  We reject Burlington's argument.

As we recognized in In re Brown, 951 F.2d 564, 569 (3d Cir. 1991), the concept of finality for purposes of "collateral estoppel does not require the entry of a judgment final in the sense of being appealable."  Instead, "the doctrine of collateral estoppel applies whenever an action is sufficiently firm to be accorded conclusive effect."  Id. (internal quotation marks omitted).  We concluded there that "[t]he wisest course [was] to regard the prior decision of the issue as final for the purpose of issue preclusion without awaiting the end judgment."  Id. Brown held that "[i]n determining whether the resolution was sufficiently firm, the second court should consider whether the parties were fully heard, whether a reasoned opinion was filed, and whether that decision could have been, or actually was, appealed."  Id.  (We admitted, however, that "[f]inality 'may mean little more than that the litigation of a particular issue has reached such a stage that a court sees no really good reason for permitting it to be litigated again.'"  Id. (quoting Dyndul v. Dyndul, 620 F.2d 409, 412 n.8 (3d Cir. 1980)).)

This finality requirement is satisfied in this case. Burlington "w[as] represented by counsel (in this case two separate firms), . . . [t]he issues were genuinely contested, and the court gave no indication that the summary judgment was tentative or likely to be changed."  See Brown, 951 F.2d at 569. Moreover, the Atlantic Mutual court did not summarily deny Burlington's summary judgment motion on (for example) grounds that there were material factual disputes; rather, it ruled in a reasoned opinion that Burlington's timeliness defense was unsuccessful as a matter of law.  Under all these circumstances, the fact that the decision was not actually appealable is of little consequence in this action. See Dyndul, 620 F.2d at 412 ("'[F]inality' for purposes of issue preclusion is a more 'pliant' concept than it would be in other contexts.").  Accordingly, we conclude that the denial of summary judgment in Atlantic Mutual is sufficiently final to be given issue preclusive effect in this action.

13

applying this exception, and in refusing to grant issue preclusive effect to the decision of the United States District Court for the Western District of Washington in <u>Atlantic Mutual</u>. The viability and/or proper scope of the exception for "unmixed questions of law" is an issue of first impression in this Circuit.

The Restatement (Second) of Judgments defines the exception for "unmixed questions of law" as follows:

> § 28.   Exceptions to the General Rule of Issue Preclusion
>
> Although an issue is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, relitigation of the issue in the subsequent action between the parties is not precluded in the following circumstances:
>
> > (2) The issue is one of law and (a) the two actions involve claims that are substantially unrelated, or (2) a new determination is warranted in order to take account of an intervening change in the applicable legal context or otherwise to avoid inequitable administration of the laws.

RESTATEMENT (SECOND) OF JUDGMENTS § 28(2) (1982).[0]

---

[0]  A leading treatise suggests a similar framework for determining whether the exception for "unmixed questions of law" should apply. <u>See</u> 18 WRIGHT & MILLER, <u>supra</u>, § 4425, at 253–54 ("Preclusion should not apply if there has been either a change in the facts or the governing rules."). This framework proceeds as follows: First, the treatise suggests that preclusion should not apply unless "[i]dentity of the issue is established by showing that the same general legal rules govern both cases and that the facts of both cases are indistinguishable as measured by those rules." <u>Id.</u> (footnotes omitted). Second, it states that "[p]reclusion also may be defeated by showing either that special reasons make it inappropriate in a particular legal setting, or

14

This exception to the doctrine of issue preclusion has its roots in a statement made by the Supreme Court over seventy years ago in United States v. Moser, 266 U.S. 236, 45 S. Ct. 66 (1924). Moser was a retired Navy captain, who successfully contended, in an initial case before the U.S. Court of Claims, that time spent as a Naval Academy cadet during the Civil War qualified as "serv[ice] during the civil war", entitling him to a pension enhancement under an applicable pension statute. Moser, 266 U.S. at 240, 45 S. Ct. at 66. In a later case, which did not involve Moser, the Court of Claims changed its interpretation of the pension statute and concluded that service as a naval cadet did not qualify as "serv[ice] during the war" under the statute. Id. Notwithstanding this change in the law, in subsequent actions brought by Moser for later installments of his enhanced pension benefits, the Court of Claims relied on, inter alia, the doctrine of issue preclusion to permit Moser to continue to receive the enhanced pension benefits. The government appealed, and the Supreme Court affirmed the application of issue preclusion.

In Moser, the Court addressed, and rejected, the contention that issue preclusion should not apply on the ground that a pure question of law was involved:

> The contention of the Government seems to be
> that the doctrine of res judicata does not
> apply to questions of law; and, in a sense,
> that is true. It does not apply to unmixed

that there has been a substantial change in the legal climate that suggests a new understanding of the governing legal rules which may require a different application." Id. (footnotes omitted).

15

> questions of law. Where, for example, a
> court in deciding a case has enunciated a
> rule of law, the parties in a subsequent
> action upon a different demand are not
> estopped from insisting that the law is
> otherwise, merely because the parties are the
> same in both cases. But a fact, question or
> right distinctly adjudged in the original
> action cannot be disputed in a subsequent
> action, even though the determination was
> reached upon an erroneous view or by an
> erroneous application of the law. That would
> be to affirm the principle in respect of the
> thing adjudged but, at the same time, deny it
> all efficacy by sustaining a challenge to the
> grounds upon which the judgment was based.

Id. at 242, 45 S. Ct. at 67. Thus the Court concluded that

"[t]he question expressly and definitely presented in this suit

is the same as that definitely and actually litigated and

adjudged in favor of the claimant in the three preceding suits,

viz: whether he occupied the status of an officer who had served

during the civil war." Id. at 242, 45 S. Ct. at 67. For this

reason, the Court concluded issue preclusion was proper.

The Supreme Court next addressed the possible

application of this exception some fifty-five years later in

Montana v. United States, 440 U.S. 147, 99 S. Ct. 970 (1979), a

case of mutual defensive collateral estoppel which involved

successive Supremacy Clause challenges to Montana's imposition of

a one percent gross receipts tax on public, but not private,

construction projects. In the initial action, a public

contractor, financed by the federal government, litigated the

constitutionality of the tax in state court. The Montana Supreme

Court unanimously upheld the tax. Instead of seeking certiorari,

16

the government, acting on its own behalf, brought a similar challenge in the federal district court in Montana, and that case reached the Supreme Court.

The Supreme Court determined that, under these circumstances, mutuality of parties existed since the government, which directed the litigation on behalf of the public contractor in the first action, was, for all practical purposes, the party in the first action. The Court affirmed the defensive use of mutual collateral estoppel against the federal government since the issue sought to be litigated was identical to the issue already litigated in the state court action and no change in controlling facts or legal principles had occurred. Id. at 155-62, 99 S. Ct. at 974-78. The Court rejected the contention that issue preclusion should not apply under an exception for "unmixed question of law":

> Of possible relevance is the exception which obtains for "unmixed questions of law" in successive actions involving substantially unrelated claims. . . .
> . . . .
> . . . [W]hen issues of law arise in successive actions involving unrelated subject matter, preclusion may be inappropriate. This exception is of particular importance in constitutional adjudication. Unreflective invocation of collateral estoppel against parties with an ongoing interest in constitutional issues could freeze doctrine in areas of the law where responsiveness to changing patterns of conduct or social mores is critical. To be sure, the scope of the Moser exception may be difficult to delineate, particularly where there is partial congruence in the subject matter of successive disputes. But the instant case poses no such conceptual difficulties. Rather, as the preceding

17

> discussion indicates, the legal "demands" of
> this litigation are closely aligned in time
> and subject matter to those in [the previous
> litigation].

Id. at 162-63, 99 S. Ct. at 978 (citations omitted).

The Supreme Court most recently addressed the proper scope of this exception in United States v. Stauffer Chemical Co., 464 U.S. 165, 104 S. Ct. 575 (1984), which involved successive actions brought by the EPA against Stauffer in response to the company's refusal to submit to inspections by private contractors hired by the EPA. At issue was whether private contractors were "authorized representatives" under § 114(a)(2) of the Clean Air Act. In the initial action, which involved an attempt by the EPA to inspect Stauffer's Wyoming plant, the Tenth Circuit held for Stauffer, concluding that private contractors were not "authorized representatives" under the statute. The identical question then arose with regard to an EPA inspection of Stauffer's Tennessee plant, leading the Sixth Circuit to conclude, inter alia, that the federal government was estopped from relitigating the question whether private contractors constituted authorized representatives under the Clean Air Act.

The government appealed and the Supreme Court affirmed, concluding "that the doctrine of mutual defensive collateral estoppel is applicable against the Government to preclude relitigation of the same issue already litigated against the same party in another case involving virtually identical facts." Id. at 169, 104 S. Ct. at 578. In so doing it rejected the

18

government's reliance on an exception for "unmixed questions of law" and expressed serious doubt regarding the proper scope of the exception:

> While our discussion in Montana indicates that the exception is generally recognized, we are frank to admit uncertainty as to its application. The exception seems to require a determination as to whether an "issue of fact" or an "issue of law" is sought to be relitigated and then a determination as to whether the "issue of law" arises in a successive case that is so unrelated to the prior case that relitigation of the issue is warranted. Yet we agree that, for the purpose of determining when to apply an estoppel, when the claims in two separate actions between the same parties are the same or are closely related it is not ordinarily necessary to characterize an issue as one of fact or of law for purposes of issue preclusion. In such a case, it is unfair to the winning party and an unnecessary burden on the courts to allow repeated litigation of the same issue in what is essentially the same controversy, even if the issue is regarded as one of "law."

Id. at 171, 104 S. Ct. at 579 (internal quotation marks and citations omitted). The Court further explained that "[a]n exception which requires a rigid determination of whether an issue is one of fact, law, or mixed fact and law, as a practical matter, would often be impossible to apply because the journey from a pure question of fact to a pure question of law is one of subtle gradations rather than one marked by a rigid divide." Id. at 171 n.4, 104 S. Ct. at 579 n.4.

Hyundai contends that given these statements, the Stauffer Court effectively overruled the issue preclusion exception for "unmixed questions of law." We disagree. Despite

19

its diffidence and ruminations, we do not believe that the Court's decision in Stauffer overruled the exception for unmixed questions of law as set forth in the Restatement and by Wright & Miller. See 18 WRIGHT & MILLER, supra, § 4425, at 198 (1994 Supp.) ("The approach suggested in the main volume is supported by the result reached in United States v. Stauffer Chem. Co." (footnote omitted)).[0]

In Stauffer, the Court found the prerequisites for the exception for unmixed questions of law unsatisfied. The Court determined that neither of the two elements justifying application of the exception to issue preclusion for unmixed questions of law were present: "The Government does not argue that the § 114(a)(2) issues in Stauffer I and Stauffer II are dissimilar nor that controlling law or facts have changed since Stauffer I." Stauffer, 464 U.S. at 170, 104 S. Ct. at 578. In

---

[0] With regard to Stauffer, Wright and Miller have acknowledged that

> it remains unclear just where the Court's opinion will lead. It is confessed that there is no clear sense of the purposes that may limit preclusion as to matters of law. No attempt is made to work through the different policies that may apply in different settings, so as to push preclusion closer to abstract issues of law or to confine it closer to commingled issues of law and common fact. The result might be a broad expansion of preclusion. The reasons for caution are sufficiently strong, however, to rely on the opinion as a possibly appropriate response to the specific case without reading it as establishing a new general policy.

18 WRIGHT & MILLER, supra, § 4425, at 198 (1994 Supp.).

20

particular, the Court analogized to its decision in Montana, where it "determined that the exception was inapplicable because of the close alignment of time and subject matter between the [two actions],"[0] id. at 172, 104 S. Ct. at 579. The Court reasoned in Stauffer that "[a]ny factual differences between the two cases [the prior and instant adjudications], such as the difference in the location of the plants and the difference in the private contracting firms involved, are of no legal significance whatever in resolving the issue presented in both cases." Id. at 172, 104 S. Ct. at 579.

Admitting that "the purpose underlying the exception for 'unmixed questions of law' in successive actions on unrelated claims is far from clear," id., the Court concluded: "whatever its purpose or extent, we think that there is no reason to apply it here . . ., [and doing so] would substantially frustrate the doctrine's purpose of protecting litigants from burdensome relitigation and of promoting judicial economy." Id. Moreover, the Court rejected the government's argument that "two cases presenting the same legal issue must arise from the very same

---

[0] In particular, the court reasoned:

> Both Stauffer I and Stauffer II arose as a result of EPA's overview inspection program for supervising state efforts to enforce national air quality standards. In both cases private contractors, in addition to EPA and state employees, tried to inspect plants owned by respondent. The inspections occurred just over two weeks apart, and in each case, Stauffer refused to allow the private contractors to enter its plant.

Id. at 579.

21

facts or transaction before an estoppel can be applied."  Id. at 172 n.5, 104 S. Ct. at 579 n.5.  "Whatever applicability that interpretation may have in the tax context, see Commissioner v. Sunnen, 333 U.S. 591, 601–602 (1948) (refusing to apply an estoppel when two tax cases presenting the same issue arose from 'separable facts'), [the Court] reject[ed] its general applicability outside of that context."  Id.[0]

In sum, the Stauffer opinion is consistent with the approach codified in the Restatement.  See Clark-Cowlitz Joint Operating Agency v. F.E.R.C., 775 F.2d 366, 375 (D.C. Cir. 1985) (recognizing after the Court's decision in Stauffer that "the test for the exception seems to be . . . whether 'the issue of law arises in a successive case that is so unrelated to the prior case that relitigation of the issue is warranted.'" (quoting Stauffer, 464 U.S. at 171, 104 S. Ct. at 579)); see also 18 WRIGHT

---

[0]  Justice White concurred in the judgment in Stauffer to stress the fact that at the time of Stauffer II, the Sixth Circuit had not yet ruled on the substantive issue whether private contractors were "authorized representatives" under the Clean Air Act.  According to Justice White, preclusion would not have been appropriate had the Sixth Circuit already clearly resolved the legal issue in question:

> Extending preclusion to circuits that have adopted a contrary rule on the merits would be acceptable were it supported by any affirmative policy.  It is not.  Judicial economy is not served for the simple reason that no litigation is prevented; the prior litigant is subject to one black-letter rule rather than another.

Stauffer, 464 U.S. at 178, 104 S. Ct. at 582.

22

& MILLER, supra, § 4425, at 199 (Supp. 1994) ("The reasons for caution are sufficiently strong . . . to rely on the opinion [Stauffer] as a possibly appropriate response to the specific case without reading it as establishing a new general policy."). In sum, the exception continues to apply following Stauffer.

## C.  Application of the Unmixed Questions of Law Doctrine

The exception to the application of issue preclusion for unmixed questions of law is satisfied, as we have explained, only when the previously determined issue is one of law, and either (1) "the two actions involve claims that are substantially unrelated" or (2) "a new determination is warranted in order to take account of an intervening change in the applicable legal context or otherwise to avoid inequitable administration of the laws."  RESTATEMENT (SECOND) OF JUDGMENTS § 28(2).  We take up the two facets of the exception in turn.

## 1.       Substantial Relationship

In determining whether two cases involve claims that are "substantially unrelated," we must assess whether the two cases involve the same application of law.  A party cannot satisfy the "substantially unrelated claim" test where "the same general legal rules govern both cases and . . . the facts of both cases are indistinguishable as measured by those rules."  18 WRIGHT & MILLER, supra, § 4425, at 253–54 (footnotes omitted).  As the Supreme Court recognized in Stauffer, issue preclusion does not require that the "two cases presenting the same legal issue must arise from the very same facts or transaction before an estoppel can be applied."  Stauffer, 464 U.S. at 172 n.5, 104 S.

23

Ct. at 579 n.5.  In fact, estoppel will be applied unless "the 'issue of law' arises in a successive case that is <u>so unrelated</u> to the prior case that relitigation of the issue is warranted."  <u>Id.</u> (emphasis added).

The <u>Atlantic Mutual</u> case, like this one, involved the denial of an indemnity claim by Burlington based solely on a Burlington contention that the claim was time barred because the claimant, in that case OOCL, had failed to provide notice of its claim within a time period specified in Burlington Rules Memorandum 2-C.  And, like the provision in this action, the provision in <u>Atlantic Mutual</u> measured the limitations period from the date of delivery.[0]  Like Hyundai's claim here, the viability of OOCL's claim in the <u>Atlantic Mutual</u> action turned on the question whether the general rule for indemnity accrual and the concomitant commencement of limitations periods should apply regardless of a contractually defined period.  As we have stated, the <u>Atlantic Mutual</u> court, relying on Ninth Circuit precedent, concluded that a "[]claim for indemnification is not barred by the limitations period in Burlington Northern's Rules Memorandum 2-C," <u>Atlantic Mutual</u> at *12, since "an action for indemnification accrues at the time of the indemnitee's payment despite a shorter contractual time limitations period applying to

---

[0] Burlington's clause in <u>Atlantic Mutual</u> provided that "all suits against BN [Burlington Northern] shall be commenced no later than 1 year after the date of delivery."  <u>Atlantic Mutual</u> at *5. In this case, the limitations clause specified that "any claim for loss or damage to lading shall be filed with BN [Burlington Northern] within nine (9) months of the date of delivery of the shipment."  App. at 107.

claims between the parties," id. (citing States S.S. Co. v. American Smelting & Refining Co., 339 F.2d at 70 (9th Cir. 1964)).

In our view, the issue of law arising in this action is not "so unrelated" to the decision of the court in Atlantic Mutual "that relitigation of the issue is warranted." Stauffer, 464 U.S. at 171, 104 S. Ct. at 579. Indeed, the issue and its application are identical. Hyundai, like OOCL, seeks to recover in indemnity from Burlington on the grounds that a limitations period prohibiting shipment damage claims presented beyond a specified time cannot start running until the time that liability is determined or a cognizable loss is incurred, since actions in indemnity do not accrue until such time. If this rule for the accrual of actions in indemnity were applied in the present action Hyundai's claim would have been timely presented, like OOCL's claim against Burlington in the Atlantic Mutual action.

While, as Burlington points out, the contractual limitations provision in this case provides for a shorter period of time (nine months as opposed to one year), and applies to the presentation of "claims" as compared to the filing of "suits," these distinctions are of no legal significance to the issue decided in Atlantic Mutual and presented here. In both cases Burlington denied the indemnity claims on the grounds that they were untimely because the contract term limited liability to a period of time (commencing at the date of delivery) that had already run. Similarly, in both actions, the indemnity claimant sought recovery notwithstanding such provision on the grounds

25

that any time limit for indemnity claims must commence when liability is determined or a cognizable loss is incurred. In sum, given these relevant similarities, we cannot conclude that the issue of law arising in this action is so unrelated to the Atlantic Mutual case that relitigation of the issue is warranted.[0]

## 2. Intervening Change and Inequitable Administration

When two actions involve claims that are not "substantially unrelated," issue preclusion still does not apply to an issue of law if a new determination of the legal issue is warranted "in order to take account of an intervening change in the applicable legal context or otherwise to avoid inequitable administration of the laws." See Haitian Ctrs. Council, Inc. v. McNary, 969 F.2d 1350, 1356 (2d Cir. 1992) (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 28(2) (internal quotation marks omitted)), rev'd on other grounds sub. nom. Sale v. Haitian Ctrs. Council,

---

[0] This conclusion accords with the decision of the Fifth Circuit Court of Appeals in Hicks v. Quaker Oats Co., 662 F.2d 1158, 1167 n.4 (5th Cir. 1981), which reasoned that non-mutual offensive collateral estoppel should apply "'if the question is one of the legal effect of a document identical in all relevant respects to another document whose effect was adjudicated in a prior action.'" Id. at 1167 n.4 (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 68, Reporter's Note cmt. c at 18-19 (Tent. Draft No. 4, Apr. 15, 1977)). The Hicks decision involved successive actions by former employees of Quaker Oats for benefits under a special retirement program. At issue in both actions was whether a letter from a member of Quaker Oats management announcing the terms for a special new retirement plan was enforceable as a binding bilateral contract. While the court ultimately ruled that the first decision should not be given collateral estoppel effect because the initial decision was based on an alternative ground, the court first rejected the argument "that estoppel should not apply because the erroneous holding of contractual liability is a pure question of law." Hicks, 662 F.2d at 1166.

26

113 S. Ct. 2549 (1993); see also Haitian Ctrs., 969 F.2d at 1356 ("'Relitigation of an issue of public importance should not be precluded when there has been an intervening change in the applicable legal context.'" (quoting Kania v. Fordham, 702 F.2d 475, 476 n. 2 (4th Cir. 1983) (internal quotation marks omitted)); Montana, 440 U.S. at 163, 99 S. Ct. at 978 ("Unreflective invocation of collateral estoppel . . . could freeze doctrine in areas of the law where responsiveness to changing patterns of conduct or social mores is critical."). No such concerns are present in this case.

Burlington does not point to, and we are unaware of, any intervening change in the applicable legal context which would warrant new consideration of the issue decided against Burlington in Atlantic Mutual. Moreover, application of issue preclusion in this case would not constitute an inequitable administration of the laws. Burlington was aware of Hyundai's claim at the time of the Atlantic Mutual litigation, and it had a full and fair opportunity to litigate the legal issue in the U.S. District Court for the Western District of Washington.

We also believe that application of issue preclusion is particularly appropriate in this case, given that reconsideration of the issue already addressed in Atlantic Mutual would reward Burlington's attempt to forum shop. See Fulani v. Bensten, 862 F. Supp. 1140, 1151 (S.D.N.Y. 1994) ("To rule otherwise would encourage the parties to forum shop, thereby undermining the purpose of collateral estoppel in promoting the finality of judgments."). By instituting this action for declaratory

27

judgment in New Jersey, Burlington seeks to avoid the result that would have been reached in a court within the Ninth Circuit, where this case would more properly have been brought since the facts and parties to this action have virtually no connection to New Jersey.[0]

Having already litigated and lost this issue within the Ninth Circuit in Atlantic Mutual, Burlington now attempts to institute another action raising the same issue within another federal circuit in the hopes that this court would reach a conclusion different from that previously reached. But, as we have stated, "once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." Montana, 440 U.S. at 153, 99 S. Ct. at 973. Accordingly, Burlington cannot now relitigate this issue that it already contested and lost in Atlantic Mutual. Issue preclusion applies.[0]

---

[0] None of the facts underlying this action occurred in New Jersey and neither of the parties are incorporated or have a principal place of business in New Jersey. The underlying case involves indemnity for a damage claim originating from a shipment traveling from Milwaukee, Wisconsin, to Pusan, South Korea via Seattle, Washington, and the litigation from which the indemnity claim arose was within the Ninth Circuit. See Tongil Co. v. Vessel Hyundai Innovator, 968 F.2d 999 (9th Cir. 1992).

[0] As mentioned, supra note 12, Justice White concurred in Stauffer so as to stress the fact that issue preclusion should not be applied within a Circuit where the Court of Appeals had already clearly ruled on the substantive legal issue. We need not address this concern, since this court has yet to directly opine on the substantive issue implicated by this case -- whether a contract provision can, consistent with COGSA  and its

28

III.  CONCLUSION

For the foregoing reasons, we will reverse the order of the district court granting summary judgment to Burlington, and remand the case with the direction to grant issue preclusive effect to the applicable legal issue resolved by the District Court for the Western District of Washington in the Atlantic Mutual litigation.

---

amendments, override the general common law rule governing accrual of claims and running of statute of limitations in indemnity actions.  See National Post Office Mail Handlers v. American Postal Workers Union, 907 F.2d 190, 194 (D.C. Cir. 1990) ("The doctrine of issue preclusion counsels us against reaching the merits in this case, . . . regardless of whether we would reject or accept our sister circuit's position.").