712 A.2d 717 (1997)
313 N.J. Super. 94
AETNA CASUALTY & SURETY CO., Plaintiffs,
v.
PLY GEM INDUSTRIES, INC. et al., Defendants.
Superior Court of New Jersey, Law Division, Middlesex County.
Decided October 22, 1997.
*719 Anthony Bartell and Andrew T. Berry, Newark, for defendant Hoover Treated Wood Products, Inc. (McCarter & English, attorneys, Cynthia C. Beagles, on the brief.)
Christopher M. Bechhold and Gary M. Glass, pro hac vice, for defendant Commercial Union Insurance Co. (Thompson Hine & Flory, Cincinnati, Ohio, attorneys, Mary Romano, Melli & Wright, Paramus, attorneys local counsel).
*718 LONGHI, A.J.S.C.
This action is presented to the Court on Hoover Treated Wood Product's (Hoover) motion for partial Summary Judgment seeking to compel Commercial Union (CU) to defend pending Fire Retardant Treated Plywood (FRTP) claims and to pay unpaid defense bill obligations.
Hoover and CU entered into three comprehensive insurance policies. Policy AZ9376-003 covers 11-27-84 to 11-27-85, policy AZ9376-005 covers 11-27-85 to 11-27-86, policy CZ9376-009 covers 11-27-86 to 11-27-87. Hoover filed this motion to compel CU to defend eight pending FRTP lawsuits in Maryland. The Maryland suits allege damage to housing units in Maryland due to Hoover's product. Hoover requested that CU defend against these allegations. CU has denied the request.
In November 1996, CU and Hoover's other insurers brought a summary judgment motion seeking a ruling that the insurers were not required to defend Hoover for the FRTP claims. The court denied the motion and ruled that the sisterhood exclusion, the owned product exclusion and the court's decision that the economic loss doctrine applied to FRTP claims did not bar coverage. The court explained that to the extent that a policy of insurance included defense obligations that insurer would be required to defend FRTP claims.
There are no genuine disputes as to the facts of this case as they relate to the contract of insurance. See Brill v. Guardian Life Ins. Co., 142 N.J. 520, 666 A.2d 146 (1995). The pertinent parts of all of the insurance contracts and the underlying complaints have been presented to the Court and no opposition has been raised to those documents. Only questions of law remain which each side has briefed and submitted to the Court.
The issue in this action is whether CU is required to defend Hoover against the property damage claims in the Maryland FRT claim. Hoover contends that the contract requires defense if any issue is alleged which could invoke coverage. CU argues that the true facts of the case should be used to determine if there is a real possibility of coverage, and that the plaintiff's complaint does not state a claim which could implicate CU's coverage obligation. Additionally, CU further argues that Hoover is collaterally estopped from arguing the issue because a jury in Pulte Home Corp. Inc. v. Hoover Treated Wood Corp., No.89-205-CIV-T-17(a) (U.S. Dist CT. Md. Dist. FL 1993), found that Hoover fraudulently induced sales of its product. CU reasons that fraud implies intentional conduct and therefore the contract language bars defense because the losses could not be unexpected or unintended.

I. Complaints:
The duty to defend is determined partly by the allegations in the complaint, therefore it *720 is important to begin the analysis by examining the complaints filed in the underlying cases. The complaints in all eight cases have been supplied and reviewed by the Court.
In Homeland Village Condominium v. The Artery Organization, Inc., No. CAL 91-84485 (Cir. Ct. Montgomery Cty, MD) paragraph nine claims "The defects set forth in Exhibit A were built by Artery and include defects resulting from the incorporation of FRT plywood in the construction of roofs of the Condominium. The deficiencies and resultant injuries complained of herein include defects resulting from the fact that the FRT plywood used in the roofs of the Condominium has begun to degrade and deteriorate, significantly weakening the roofs and resulting in substantial impairment in strength and structural integrity of the roofs, and damaging other components of the roofs in which it is incorporated." (emphasis added)
In Calvert's Walk Assoc. v. Hoover Treated Wood Products Inc., No. 20671-44-91 (Cir. Ct. Hartford Cty MD), paragraph eleven of the Amended Complaint claims, "Through investigations, inspections and tests carried out it was found that the FRT plywood at the project had deteriorated and degraded.... The deterioration and degradation of the FRT plywood had resulted in water leaks in a number of the buildings, with resulting damage to other building elements and finishes and to personal property." (emphasis added)
In Bedford Commons Condominium v. Hoover Treated Wood Products, Inc., No. 97/195/94CV10911, plaintiffs complain that the FRT plywood installed in the roofs has degraded and caused a maintenance worker to fall through the roof into a home owners kitchen. They also complain of leaks and damage to shingles caused by the FRT plywood.
The remaining complaints contain assorted variations of similar claims against Hoover for personal and property damage caused by FRT plywood.

II. Contract language:
All three insurance policies between Hoover and CU contain the same language. "The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage even if any allegations of the suit are groundless, false or fraudulent and make such investigation and settlement of any claim or suit as it deems expedient but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the companies liability has been exhausted by payment of judgments or settlements." (emphasis added)

III. Conflict of laws:
CU argues that this case has no connection to New Jersey law. The contract with Hoover was entered into in Georgia and all of the cases which Hoover seeks defense of in this motion are in Maryland. The place of the formation of the contract generally controls the choice of law. These insurance contracts were formed in Georgia; therefore Georgia law should apply. New Jersey's choice of law rules determine the insurers duty to defend by the law of the place of the contract, unless some other state has a dominant and significant relationship to the parties and the case. State Farm Mutual Auto. Ins. Co. v. Estate of Simmons, 84 N.J. 28, 36, 417 A.2d 488 (1980). This rule protects the reasonable expectations of the parties and provides for predictability and uniformity.
Under Maryland's choice of law statutes a contract is made where the last act necessary to make the contract binding took place, usually the place where the policy is delivered and the premiums are paid. ARTRA Group v. American Motorists Ins. Co., 1994 WL 100794, 1994 Md.App. Lexis 46 (Mar 30, 1994). Under this rule Maryland will apply Georgia law, because the last act of the formation of the contract was payment of premiums which is in Georgia.
CU argues that under Georgia law they will not be forced to defend Hoover, because Georgia uses closer scrutiny and outside factors *721 when determining the true facts of the case versus the allegations. This closer scrutiny would show that there are no true facts which would allow for indemnification and therefore there is no duty to defend.
Hoover counters, arguing that there is no need to make a choice of law distinction because Georgia and New Jersey apply the same law. There is no conflict of laws and therefore no choice is necessary. Quintana v. Brambila, 192 N.J.Super. 361, 364, 470 A.2d 22 (App.Div.1983).
This court finds that a choice of law is not necessary, because Georgia law on the duty to defend is the same as New Jersey law. See Penn-America Ins. Co. v. Disabled American Veterans, Inc., 224 Ga.App. 557, 558, 481 S.E.2d 850, aff'd, 268 Ga. 564, 490 S.E.2d 374 (1997). Loftin v. United States Fire Insurance Company, 106 Ga.App. 287, 127 S.E.2d 53, 56 (1962) involved an insurance contract with similar duty to defend language as in the CU policy. The court explained that an insurer must defend if the complaint states a cause of action, even if the insurer knows outside facts which would put the claim outside of the insurance coverage. The insurer must defend these claims, because it has expressly obligated itself to do so in the policy language, which states that it will defend even groundless, false or fraudulent suits. Id. 127 S.E.2d at 56 (citations omitted). The duty to defend is determined by comparing the allegations of the complaint with the obligations of the contract for insurance. Outside facts are not considered where the complaint alleges an action which is covered under the insurance contract. Id. at 57, 59. No conflict of law exists, as Georgia applies the same rules as New Jersey with reference to an insurer's duty to defend.
Georgia and New Jersey both hold that where the complaint does not allege facts which trigger a duty to defend, a court may consider other outside factors in determining whether or not to impose a duty to defend. More importantly, both states also hold that where the complaint triggers coverage, outside factors cannot be used to defray the insurers duty to defend. Avanti Coatings Inc. v. Malone, A-2714-95T3 Slip Op at 5-6 (App. Div. Jan 24, 1997). There is no need to make a choice of law.
The court has examined the conflict of law issue raised by CU. Where a contract is formed in another state that state's law should be applied, however, there is no conflict if the law is the same in both states. Georgia and New Jersey and even Maryland use the same legal standards for determining the duty to defend in insurance coverage cases.

IV. Duty to defend
The duty of an insurer to defend is determined by comparing the policy language with the underlying complaint. Voorhees v. Preferred Mutual Ins. Co., 128 N.J. 165, 173-74, 607 A.2d 1255 (1992); Loftin, 106 Ga.App. 287, 127 S.E.2d 53. If the complaint alleges a covered claim the insurer must defend. The complaints in these cases allege property damage and the CU policy requires the insurer to defend Hoover against claims seeking property damage awards. The underlying cases allege damage to the roofs and other roof components, such as shingles, they also allege damage to the interior of the homes from leakage. This is all property damage to items other than Hoover's own product.
The duty to defend is also broader than the duty to indemnify. The insurer must defend where there is potentially a covered claim being raised, and must continue to defend until it can show that there is no potential liability remaining in issues in the case. Morton International Inc. v. General Accident Ins. Co., 266 N.J.Super. 300, 348, 629 A.2d 895 (App.Div.1991), aff'd 134 N.J. 1, 629 A.2d 831 (1993), cert. denied 512 U.S. 1245, 114 S.Ct. 2764, 129 L.Ed.2d 878, reh'g denied 512 U.S. 1277, 115 S.Ct. 25, 129 L.Ed.2d 923 (1994).
The defenses raised by the insurers do not bar coverage or prevent defense of the claims. This court on September 20, 1996, stated that "the underlying plaintiffs did allege damage to other property other than Hoover's own product and that there is coverage." Again in the November 22, 1996, opinion this court reasoned that coverage *722 would be found where such allegations make out a claim which falls within the purview of the policy coverage.
CU argues that the Maryland cases were filed after Hoover's policy expired in 1987. In order to be covered under the CU policy there must be an occurrence which caused property damage during the policy period. CU argues that none of the Maryland cases allege property damage at the time of installation, which is when CU was the insurer. CU opines that FRTP does not begin to deteriorate immediately, it takes several years for it to effect other property around it, and because none of the complaints specifically allege damage during 1986 or 1987 CU cannot be forced to supply coverage.
The duty to defend is clear in New Jersey. The Supreme Court in 1992 clearly stated that the duty to defend is determined by the claims made in the complaint and neither the groundless nature of the claims nor the inartfulness of the drafting of the complaint will remove the duty to defend. Voorhees, supra 128 N.J. at 174, 607 A.2d 1255.
The complaints in the Maryland cases do indicate damage to other materials besides the FRT wood. They allege damage to shingles and other roofing materials. The policy with CU indicates that there is coverage for and a duty to defend property damage claims. The CU policy states:
the company shall have the right and DUTY to defend any suit against the insured... even if any of the allegations of the suit are groundless, false or fraudulent and may make such investigation and settlement of any claim or suit it deems expedient. (emphasis added)
It is undisputed that CU's policies were in effect at the time FRTP was being installed in the buildings and that the first complaints were filed after the policy term was over. However contrary to CU's argument this does not relieve their duty to defend. Plaintiff in the underlying case are only held to notice pleading requirements. They are not required to plead with specificity. The absence of a date denoting the beginning of damages does not prevent them from alleging damage from the time of installation.
Simply stated, the absence of specific dates in the complaints regarding when manifestation is said to be discovered does not free CU of its duty to defend. The duty to defend is determined by comparing the policy language with the allegations in the complaint, "when the two correspond, duty to defend arises, irrespective of the claims actual merit". Voorhees, supra 128 N.J. at 173, 607 A.2d 1255. CU's duty is triggered. The law does not require the insured to litigate the entire case and determine which allegations and facts are true or false before the duty to defend appears. This would defeat the purpose of purchasing insurance with defense obligations. Under such a procedure, every insured would be required to prelitigate the case on the accusation by the insurance company that some of the facts or claims may be untrue.
The complaints do state a claim for property damage to other parts of the roofs and buildings, which triggers CU's policy, and its duty to defend.

V. Collateral Estoppel
CU objects to this motion on the grounds of collateral estoppel. CU argues that Hoover is collaterally estopped from arguing that it did not expect the property damage that resulted from the use of its product. CU refers to Pulte Home Corp. Inc. v. Hoover Treated Wood Corp., No.89-205-CIV-T-17(a) (U.S. Dist Ct. Md. Dist. FL 1993) where a jury determined that Hoover fraudulently induced purchases of FRTP while knowing that it would deteriorate prematurely.
Pulte was tried to a conclusion in 1993. The jury found that Hoover breached the express warranty, the implied warranty and fraudulently induced the purchase of its product while knowing it was defective. Hoover appealed the decision and before the appeal was decided, Pulte Home Corp. settled with Hoover for about half the amount of the original verdict. The appellate court then remanded the matter to the District Court which vacated the judgment.
*723 Collateral estoppel is part of the law of res judicata, which prevents relitigation of issues already settled between the parties. Morton, 266 N.J.Super. at 321, 629 A.2d 895. The doctrine is equitable in nature and will be applied only when fair. Id. Several elements are required for collateral estoppel to apply: (1) the issue to be precluded is identical to the issue decided in the prior proceeding,;(2) the issue was actually litigated in the prior proceeding; (3) the court in the prior proceeding issued a final judgment on the merits; (4) the determination of the issue was essential to the prior judgment; and (5) the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding. In re Estate of Dawson, 136 N.J. 1, 20-21, 641 A.2d 1026 (1994)(internal quotations omitted); see also Ettin v. Ava Truck Leasing Inc., 53 N.J. 463, 251 A.2d 278 (1969); Burlington Northern R. v. Hyundai Merchant Marine, 63 F.3d 1227, 1232 (3rd Cir.1995)(rehearing and suggestion for rehearing en banc denied), In re Graham, 973 F.2d 1089, 1097 (3rd Cir.1992) remanded 1994 WL 777359 (Bankr.E.D.Pa.1994); Hernandez v. Region Nine Housing Corp., 146 N.J. 645, 684 A.2d 1385 (1996)(stating New Jersey follows the formulation of collateral estoppel as set forth in the Restatement (Second) of Judgments § 27). The doctrine of issue preclusion ensures that "once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation," Burlington Northern, 63 F.3d at 1231 (citing Montana v. United States, 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979)).
Hoover argues that the Pulte decision was vacated pursuant to an agreement between the litigants pending appeal and therefore not a final judgment capable of being applied in succeeding cases. Under current law, mootness of the issue before the appellate court by reason of settlement between the parties does not necessarily justify vacatur of a judgment under appeal. U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership, 513 U.S. 18, 22-23, 115 S.Ct. 386, 393, 130 L.Ed.2d 233, 244 (1994). Neither, however, is vacatur of a judgment under appeal prohibited. Id. In this case, the District Court vacated and this court is not presented with review of that action. Furthermore, once the question of vacatur is decided, it is not subject to further review or attack. U.S. Philips Corp. v. Sears Roebuck & Co., 55 F.3d 592, 598 (Fed.Cir.), cert. denied 516 U.S. 1010, 116 S.Ct. 567, 133 L.Ed.2d 492, cert. denied 516 U.S. 1028, 116 S.Ct. 672, 133 L.Ed.2d 522 (1995); See also Zeneca Ltd. v. Novopharm Ltd., 111 F.3d 144, 1997 WL 168318 *2 (Fed.Cir.1997).
Prior to the Supreme Court's pronouncement that vacating judgments pursuant to settlement should be avoided, the Court stated application of vacatur "clears the path for future relitigation of the issues between the parties and eliminates the judgment." United States v. Munsingwear, 340 U.S. 36, 40, 71 S.Ct. 104, 106, 95 L.Ed. 36, 41 (1950)(emphasis added). Accordingly, a vacated judgment and the factual findings underlying it have no preclusive effect; collateral estoppel does not apply to vacated judgments. Zeneca Ltd. v. Novopharm Ltd., 919 F.Supp. 193, 196-97 (D.Md.1996); Accord U.S. Philips Corp., 55 F.3d at 598; Harris Trust and Savings Bank v. John Hancock Mutual Life Ins. Co., 970 F.2d 1138, 1146 (2d Cir.1992) aff'd 510 U.S. 86, 114 S.Ct. 517, 126 L.Ed.2d 524 (1993); Pontarelli Limousine, Inc. v. City of Chicago, 929 F.2d 339, 340 (7th Cir.1991)(en banc); Falcon v. General Tel. Co., 815 F.2d 317, 320 (5th Cir.1987); No East-West Highway Committee v. Chandler, 767 F.2d 21, 24 (1st Cir.1985); Dodrill v. Ludt, 764 F.2d 442, 444 (6th Cir.1985); Stamps v. Ford Motor Co., 650 F.Supp. 390, 404 (N.D.Ga.1986); See also S-1 by and Through P-1 v. State B. of Ed., 6 F.3d 160 (4th Cir.1993)(Wilkinson J. dissenting), vacated, 21 F.3d 49 (4th Cir.), cert. denied, 513 U.S. 876, 115 S.Ct. 205, 130 L.Ed.2d 135 (1994); Cf. Bates v. Union Oil Co. of Calif., 944 F.2d 647, cert. denied 503 U.S. 1005, 112 S.Ct. 1761, 118 L.Ed.2d 424 (1992)(holding where vacatur of a judgment is reached without balancing the effects of the competing values of finality of judgment and the right to relitigate unreviewed disputes, collateral estoppel effect will apply; *724 however where the balancing test is applied properly, collateral estoppel will not apply.)
Collateral estoppel does not apply here, since Pulte judgment was vacated. A jury in the Middle District of Florida found Hoover liable for fraudulent inducement and awarded damages to Pulte Home Corp. Following the judgment, on October 12, 1993, Hoover appealed the judgment entered against it. On October 25, 1995, the Court of Appeals for the Eleventh Circuit having received from the parties a "stipulation dismissing appeal and motion to remand case[,]" dismissed the appeal, with prejudice, and remanded the case to the District Court specifically so the trial court could consider a motion to vacate the judgment. The following day, on October 26, 1995, the District Court approved a consent order which "vacated the judgment" against Hoover pursuant to Fed.R.Civ.P. 60(b) and dismissed the action against Hoover with prejudice.
The decision to make a motion to vacate the judgment was based upon a negotiated settlement between the parties. Additionally, the motion was not granted as of right, as the District Court possessed the discretion as to whether or not to grant the motion. See Fed.R.Civ.P. 60(b) As the Pulte judgment was vacated it will not collaterally estop Hoover in the instant matter.
Even if Pulte had not been vacated, the doctrine of collateral estoppel does not prevent Hoover from seeking to compel CU to defend and pay defense costs. While collateral estoppel does not require identical parties, it does mandate identity of issues. Burlington Northern, 63 F.3d at 1232. In Morton, the New Jersey Supreme Court held collateral estoppel did not prevent an insurer from litigating coverage issues with its insured in litigation subsequent to the initial proceeding, to which the insurer was not a party. Morton, at 90, 629 A.2d 831. The issue presented in Morton was whether a trial court determination that the insured intended its action, though perhaps not the consequences of the act, would collaterally estop the insured from contending its action was inside its insurance policy's coverage of "occurrence[s] ... provided the insured did not intend or anticipate" the occurrence. Id. at 10, 629 A.2d 831. In distinguishing between issues of liability and those of insurance coverage the Appellate Division in Morton stated:
The liability trial between plaintiff's predecessor and the DEP did not touch upon the issue of insurance coverage. The question of plaintiff's intent in creating and dumping mercury-laden effluent to course over its property and end up in Berry's Creek was not considered in the context of insurance policy provisions, but only in terms of statutory and common-law liability for such acts. Not having the opportunity to present its views in court on plaintiff's intent relative to the policies issued by them, defendant insurers certainly are not now precluded from litigating the issue by Judge Lester's findings on intent.
Clearly from the context of Judge Lester's opinion, his observations about plaintiff's predecessors' intent were made in a far different context than on the summary judgment motion in this coverage case. Judge Lester, having found plaintiff strictly liable on statutory grounds, turned to consider an alternative basis for liability asserted by the State, namely, nuisance theory liability. He began by finding that the State had established plaintiff's liability under a statutory nuisance theory. He then moved onto the State's claim that plaintiff was liable under a common law nuisance theory, an assertion which Judge Lester rejected on the basis that the State failed to prove intentional conduct on the part of plaintiff. Judge Lester examined the term "intent" as it "is used in the law of torts." He found that [w]hat is meant is that the actor acts for the purpose of causing the invasion of another's interest or knows that such an invasion is resulting or is substantially likely to result from those acts. Surely Berk and WRCC intended to and volitionally did manufacture mercury compounds and dumped waste on the Velsicol property. However, the court cannot find that the acts were done with the intent to pollute the waters of the State with the knowledge that such an invasion was substantially certain to occur. No such knowledge or intent may be imputed to *725 defendants under an intentional tort theory.
The judge was not considering whether plaintiff's conduct was intentional within the meaning of the insurance policy provisions which were before Judge Huot. His findings are not conclusive against the insurers under the circumstances. Id. 266 N.J.Super. at 322-23, 629 A.2d 895.
Similarly, Hoover argues that Pulte does not bar this action because the issues are not identical, the Pulte case involved liability issues between Hoover, the tortfeasor, and Pulte, the injured party. This case involves contract issues between Hoover, the insured tortfeasor and CU, its insurer. In Pulte the jury determined that Hoover was liable to Pulte on the basis that Hoover fraudulently induced its customers into purchasing FRT plywood. Neither the jury nor Hoover were called upon to address insurance contract issues between Hoover and CU. Thus for example, the jury did not decide whether Hoover's fraudulent actions constituted an "expected or intended" act within the meaning of an insurance contract. Hoover never had to address the "insurance issues" in Pulte. Hoover's interests in the Pulte trial were focused solely on the defense of the liability issues; and CU may not raise the findings of the jury on the liability or tort issues as collaterally estopping Hoover in this insurance contract dispute.

VI. Conclusion:
For all of the reasons stated above I find that, CU has the duty to defend Hoover in this case. Regardless of which state's law is applied the contract language is clear, the complaints filed trigger the duty to defend under the policy. The finding by a jury in Pulte that Hoover fraudulently induced the purchase of FRT plywood is not a bar to Hoover's claim for defense for its insurance matters. Hoover's motion for summary judgment is granted and CU is obligated to defend and to pay unpaid defense obligations. Counsel for Hoover shall submit an appropriate order under the five day rule.